MONROE COUNTY, Respondent, v. KRUSE, Appellant.

No. 75-248-CR. Submitted on briefs October 6, 1976.—
Decided February 15, 1977.
(Also reported in 250 N. W. 2d 375.)

For the appellant the cause was submitted on the brief of *J. David Rice* of Sparta.

For the respondent the cause was submitted on the brief of *Michael J. McAlpine*, Monroe County assistant district attorney. ·

DAY, J.   Karl J. Kruse (defendant) was convicted on June 24, 1975 in a trial before the court of operating a motor vehicle under the influence of an intoxicant con-

trary to Monroe county ordinance 5.01 adopting Sec. 346.63 (1) (a), Wis. Stats.[1] The defendant was granted leave to attend Group Dynamics School in lieu of revocation of driver's license and ordered to pay a forfeiture of $175.00 plus costs. An appeal was taken to the circuit court for Monroe county and was affirmed on June 27, 1975.

The question on appeal which we deem controlling is whether the evidence at trial was sufficient to sustain a finding that the defendant drove his vehicle while under the influence of an intoxicant at or about 12:53 a.m., as charged. While defendant acknowledges the materiality of this question, he would have us reach a second question: Whether "operating a vehicle" contrary to the statute encompasses sleeping in it by the side of the road with the motor running. Because we conclude the evidence was sufficient to show defendant actually *drove* his automobile while under the influence, requiring a "yes" answer to the first question, we do not reach the second question.

On January 19, 1974, two Monroe County Traffic Department officers were traveling east on highway 71 approximately one and eight-tenths miles east of Wilton. They came upon the defendant's car parked along the side of the road. Both officers testified the rear portion of the defendant's car protruded onto the traveled portion of the highway. The defendant testified that the rear tires might have been on the shoulder but not on the asphalt portion of the road. There was some loose snow in the area but it had been bladed off into the ditch. The officers found the defendant asleep behind the steering wheel. The windows were up, the engine was run-

---

[1] "346.63 (1) (a) *Operating under influence of intoxicant.* (1) It is unlawful for any of the following to drive or operate a motor vehicle:

(a) A person who is under the influence of an intoxicant or controlled substance; . . . ."

ning and the car radio was playing quite loudly. One of the officers knocked on the window and the defendant did not respond. He then opened the door and woke the defendant. There was a strong smell of alcohol on the defendant's breath. One of the officers explained the "finger to nose" test but testified that he dispensed with it when the defendant did not seem to understand what he was talking about. The defendant's speech was normal. He walked a line "reasonably well" but on coming back up the line "staggered a little bit" and at the end leaned on the car. One of the officers testified that he did not know if alcohol was the cause of the defendant leaning on the car. The defendant testified that he had a problem in walking because of a fall the year before. The officers gave it as their opinion that the defendant was under the influence of alcohol.

Defendant was given a citation for driving a vehicle while intoxicated at 12:53 a.m. One officer stated that in his opinion, "he was operating the vehicle when I saw him. The vehicle was running, parked on the roadway and he was behind the steering wheel of the vehicle." The defendant was arrested, taken to the Monroe county jail for tests, including a breathalyzer test which recorded .12% blood alcohol by weight. At this time the defendant was 5'11" tall and weighed one hundred and seventy-five pounds. He was sixty-eight years old and testified that he had a bad case of flu. He had not eaten since 1:20 p.m. on the afternoon of January 19, 1974. He said he had driven approximately two hundred and seventy-five miles on the day in question and had had five hours sleep the night before. He went to Coon Valley to work on a pipe line. He left at 7:00 p.m. and went to a tavern in Wilton where he had two seven-ounce glasses of beer. At about 9:00 p.m., he went to another tavern where he danced and had three more glasses of beer. He said he left at 11:00 or 11:30 p.m. and, because he

had a headache, he went to another tavern where he had a glass of water and two cold tablets. He then went to his car which was parked on Main street in Wilton and slept for about an hour. He said when he awoke, he had a "splitting headache" so he took two more aspirin. He then started to drive home but because he was tired, he pulled over to sleep. He left the motor running in order to operate the heater.

Defense counsel argues that parking a car on the side of the road does not constitute "operating." The county court found among other things, "that the defendant was operating a motor vehicle on January 19, 1974 at or about 12:53 a.m. in the morning," and also found that the defendant was under the influence of an intoxicant. The circuit court on review affirmed the lower court finding.

An ordinance violation that also constitutes a violation of state criminal law must be proved by "clear, satisfactory and convincing evidence."[2] On appeal, this court begins with the findings of the trial court.[3]

The issue is whether or not the defendant was under the influence at a time when he would have been "operating" the motor vehicle. The evidence showed that both officers smelled alcohol on his breath and believed him to be intoxicated. Both testified as having extensive experience in observing intoxication in others. The defendant himself testified that he had taken a combination of five beers, two cold tablets and two aspirin between 7:00 p.m. and 11:00 p.m., and that he had not eaten since 1:20 p.m. that afternoon. The breathalyzer test taken at 1:41 a.m. indicated a blood alcohol reading of .12% by weight which is prima facie evidence that he

---

[2] *City of Madison v. Geier*, 27 Wis.2d 687, 692, 693, 135 N.W.2d 761 (1965).

[3] *City of Madison v. Geier, supra*, p. 690.

was under the influence of an intoxicant, Sec. 885.235 (1) (c), Stats.[4]

One of the officers testified that out on the highway when the defendant walked in a line, he "staggered" and gave it as his opinion from his observations that the defendant was in fact under the influence of an intoxicant.

The evidence adduced at trial is sufficient to support the finding that the defendant operated a vehicle "at or about 12:53 a.m." while under the influence of an intoxicant. To sustain the burden the prosecution was required to establish (1) that the person charged was operating a vehicle on the highway and (2) he was under the influence of intoxicants. *Shawano County v. Wendt,* 20 Wis.2d 29, 30, 121 N.W.2d 300 (1963); *Milwaukee v. Richards,* 269 Wis. 570, 69 N.W.2d 445 (1955). The defendant admitted he drove the short distance from Main Street in Wilton to the place on highway 71 where he decided to stop and sleep. There is evidence to support a finding that the defendant drove to this spot.

When specific findings are not made by the trial court, this court may affirm if the examination of the evidence shows the trial court reached a result which the evidence would sustain if a specific finding supporting that result had been found. *Dittman v. Nagel,* 43 Wis.2d 155, 159, 168 N.W.2d 190 (1969). A review of the evidence indicates that the defendant was actually driving on the highway shortly before he was arrested. The defendant

---

[4] "885.235 *Chemical tests for Intoxication.* (1) . . . (c) The fact that the analysis shows that there was 0.1% or more by weight of alcohol in the person's blood is prima facie evidence that he was under the influence of an intoxicant, but shall not, without corroborating physical evidence thereof, be sufficient upon which to find the person guilty of being under the influence of intoxicants."

testified that he had his last drink by 11:00 or 11:30 p.m. He said that he then slept in his car on Main Street in Wilton for about an hour. He took two aspirin when he awoke. He then started to drive home. Based on this evidence his journey commenced somewhere between 12:05 (allowing five minutes for taking the aspirin at another tavern) and 12:35 a.m. He parked the car less than two miles down the road. It would be reasonable to add two to four minutes which would put the time he stopped between 12:07 and 12:39 a.m. He was ticketed at 12:53 a.m., only fourteen minutes after the time which the lower court could have found to be the time that he actually parked. This supports the finding that he operated the vehicle "at or about 12:53 a.m."

We hold the finding of the trial court that the defendant operated a motor vehicle under the influence of an intoxicant is not against the great weight and clear preponderance of the evidence which is the test we must apply.[5] We therefore affirm the order of the circuit court which affirmed the judgment of the trial court.

*By the Court.*—Order affirmed.

[5] *City of Milwaukee v. Thompson,* 24 Wis.2d 621, 623, 130 N.W. 2d 241 (1964).