COUNTY OF MILWAUKEE, Plaintiff-Respondent,

v.

John T. PROEGLER, Defendant-Appellant.

Court of Appeals

*No. 79–1080. Submitted on briefs January 21, 1980.—Decided March 18, 1980.*
(Also reported in 291 N.W.2d 608.)

616

For the defendant-appellant, the cause was submitted on the briefs of *Shapiro, Gorsky & Dubin, Ltd.,* and *John F. Fuchs,* of counsel, of Milwaukee.

For the plaintiff-respondent, the cause was submitted on the brief of *E. Michael McCann,* district attorney,

with whom on the brief was *Daniel D. Blinka,* assistant district attorney.

Before Decker, C.J., Moser, P.J., and Cannon, J.

CANNON, J. This is an appeal from a judgment of conviction entered on June 21, 1979, finding defendant guilty of operating a motor vehicle while under the influence of an intoxicant, contrary to Milwaukee County, Wisconsin Ordinances Title I, §I adopting sec. 346.63 (1), Stats.

On April 30, 1978, at approximately 3:52 a.m., deputies of the Milwaukee County Sheriff's Department found the defendant sleeping behind the steering wheel of a pickup truck parked partially on the right emergency ramp of I–43. The keys were in the ignition; the motor was running; the lights and heater were on. The automatic transmission shift lever was in the "park" position. The defendant testified to having parked his vehicle and fallen asleep at approximately 1:15 to 1:30 a.m. on the same date.

The defendant was conveyed to the Milwaukee County Sheriff's Department and submitted to a breathalyzer test. The test indicated that defendant's blood contained 0.2 percent by weight of alcohol at 4:39 a.m. Prior to the administration of the test, the defendant was advised as follows:

2. If you refuse to submit to the chemical test you will be given sixty (60) days in which to request a hearing into the matter of your refusal. If your refusal is found to be unreasonable or if you do not request a hearing or waive your right to a hearing, your operating privileges will be suspended for sixty (60) days.

. . . .

5. If you are convicted of a violation of Section 346.63 (1) (a) or an ordinance which is in conformity therewith, after having unreasonably refused to submit to a chemi-

cal test, your operating privilege will be revoked for a period of one (1) year.

Defendant was cited for operating a motor vehicle while under the influence and an initial appearance was scheduled for May 9, 1978. The defendant appeared only by counsel at that time. At the request of the county, the initial appearance was adjourned so that the defendant could personally appear. He did so on May 10, 1978, and the Assistant District Attorney informed the defendant as follows pursuant to sec. 343.27(1), Stats.:

"I wish to inform the defendant that upon conviction forfeiture of stipulation of no contest to the charge of operating while intoxicated, that conviction forfeiture of stipulation will result in assessment of demerit points against his driving record. An accumulation of 12, 18, or 24 points in one, two, or three years respectively will be cause for revocation of driving privileges. Further conviction forfeiture of stipulation no contest to the charge of operating while intoxicated will result in revocation or suspension of his driving privileges." [sic]

The defendant then moved to suppress the breathalyzer evidence on the ground that prior to taking the breathalyzer test he was not advised of the possible license revocation upon conviction. He claims that he should have been informed at the time of the arrest that his license could also be suspended upon conviction of the offense. The county court suppressed the results of the breathalyzer test. On appeal the circuit court summarily reversed the county court's order and remanded the matter to the Misdemeanor Division of the circuit court for trial. After a trial to the court on June 21, 1979, the defendant was found guilty of operating while under the influence of an intoxicant. The defendant's driving privileges were ordered revoked for ninety days and the defendant was ordered to attend Group Dynamics Traffic Safety School. Upon defendant's agreement to at-

tend the school, the court stayed the ninety-day revocation order, conditioned on successful completion of the school.

The defendant raises four issues on appeal:

1. Did the failure to advise the defendant prior to administration of the breathalyzer test of the potential revocation of his driving privileges upon conviction of a violation of sec. 346.63(1), Stats.,[1] constitute a denial of due process?

2. Did the failure to advise the defendant prior to the administration of the breathalyzer test of the potential revocation of his driving privileges upon conviction of a violation of sec. 346.63(1), Stats., constitute an illegal search and seizure?

3. Was the trial court's finding that the defendant operated his vehicle on a highway while under the influence of an intoxicant against the great weight and clear preponderance of the evidence?

4. Is sec. 346.63(3), Stats., unconstitutional in its application to this defendant?

## I.

The Wisconsin Statutes mandate revocation of an individual's operating privileges in the following instances. After a first conviction, any person convicted of violating sec. 346.63(1), Stats., or a local ordinance in conformity therewith shall have his license revoked "for not less than 3 months nor more than 6 months." Sec. 343.30 (1q)(c), Stats. Two or more convictions of operating under the influence will result in the automatic revocation of operating privileges for one year. Sec. 343.30 (1q)(d) and 343.31(1)(b), Stats. The Wisconsin Statutes also establish certain procedural safeguards to ac-

[1] 346.63 Operating under Influence of Intoxicant. (1) No person may drive or operate a motor vehicle while under the influence of an intoxicant or a controlled substance.

company mandatory revocation of operating privileges. Under sec. 343.27(1) a person charged with such an offense must be informed by "the enforcement officer, city or village attorney or district attorney handling the case" that conviction for the offense will result in revocation of his license, and must sign a statement acknowledging this information. *See also* sec. 347.27(2) and (3), Stats.

Defendant challenges sec. 343.27(1), Stats., alleging that he should have been informed at the time of the arrest, of possible revocation upon conviction rather than at the initial appearance. The thrust of defendant's argument is that he was only half-advised of his rights at the time of his arrest and, therefore, could not give an informed consent to the administration of the breathalyzer test. Defendant bases his claim upon a denial of due process. As stated by defendant in his brief:

At no time is he [the defendant] advised that his license can be revoked merely upon conviction. The defendant [therefore] makes the decision to take the breathalyzer to avoid revocation, and in so doing yields evidence to the State which could lead to his revocation. He has been precisely half-advised.

The statute in question reads:

343.27 Accused to be Instructed as to Mandatory Revocation and Demerit Point Provisions. (1) Whenever a person is charged with a violation of law which requires upon conviction that his operating privilege be revoked, the enforcement officer, city or village attorney or district attorney handling the case shall inform him that a plea of guilty or no contest or a forfeiture of deposit under ch. 345 will result in such revocation and shall require him to sign a statement to the effect that he has been so informed.

We find defendant's argument to be without merit. First, defendant erroneously equates the term "arrest" with the term "charged." The terms are not synonymous.

A person arrested without a warrant for violation of a traffic regulation must be issued a citation. Sec. 345.23, Stats. The citation must conform to the requirements set forth in sec. 345.11 and thereafter serves as the complaint or charging document. Sec. 345.40, Stats. A court acquires jurisdiction upon filing of the complaint with the clerk. Sec. 345.11, Stats. The Wisconsin Supreme Court discussed these procedures in *State ex rel. Warrender v. Kenosha County Court, Branch III,* 67 Wis.2d 333, 345, 227 N.W.2d 450, 455 (1975):

Under the Wisconsin uniform traffic citation and complaint form the traffic officer writes out the citation in quadruplicate. He gives the citation copy to the violator. This is merely a notice which tells the person that he has violated a certain law and fixes the court date. It is signed by the arresting officer. The complaint copy is forwarded to the court where it is signed by the so-called "court officer" upon information and belief.

The issuance of a formal charge therefore does not occur at the same time that defendant is arrested.

Second, the statute in question specifically refers to "city or village attorney or district attorney" as well as enforcement officers. The former do not become involved until the initial appearance stage of criminal proceedings.

Finally, the nature of defendant's procedural due process claim does not demonstrate lack of notice, a hearing, an opportunity to present evidence, or any other procedural protection which the fourteenth amendment might require.

## II.

Defendant further alleges that failure to advise him of the potential revocation of his driving privileges upon

conviction constituted an illegal search and seizure. The basis of his argument is that he was not sufficiently advised to allow him to make an "informed or intelligent" decision to submit to a "seizure" of his breath, *i.e.*, submitting to the breathalyzer. This argument is without merit.

Any person who drives or operates a motor vehicle in Wisconsin is deemed to have given consent to a test of his breath, blood or urine. Sec. 343.305, Stats. This consent is not optional, but is an implied condition precedent to the operation of a motor vehicle on Wisconsin public highways. The Wisconsin Supreme Court discussed this aspect of sec. 343.305 in *Scales v. State*, 64 Wis.2d 485, 493–94, 219 N.W.2d 286, 291–92 (1974) :

It is not our understanding, however, that the implied consent law was intended to give greater rights to an alleged drunken driver than were constitutionally afforded theretofore. Rather, its purpose was to impose a condition on the right to obtain a license to drive on a Wisconsin highway. The condition requires that a licensed driver, by applying for and receiving a license, consent to submit to chemical tests for intoxication under statutorily determined circumstances. The refusal to actually submit to such test can result in revocation of the license. It was intended to facilitate the taking of tests for intoxication and not to inhibit the ability of the state to remove drunken drivers from the highway. In light of that purpose, it must be liberally construed to effectuate its policies.

While the taking of a breath sample is a search and seizure within the meanings of the United States and Wisconsin Constitutions, such a search can be conducted if incident to arrest or if a police officer has probable cause to arrest. *Schmerber v. California*, 384 U.S. 757 (1966) ; *Waukesha Memorial Hospital, Inc., et al. v. Baird, et al.*, 45 Wis.2d 629, 173 N.W.2d 700 (1970) ; *State v. Bentley,*

92 Wis.2d 860, 286 N.W.2d 153 (Ct. App. 1979). The officers here had probable cause to arrest the defendant. Moreover, the United States Supreme Court has held that it is unnecessary for the state to establish that a person who consented to the search knew that he had a right to refuse. *Schneckloth v. Bustamonte,* 412 U.S. 218 (1973). Thus the concept of an informed consent to search and seizure under the fourth amendment has been rejected. The defendant here was informed of the consequences of a refusal to submit to the breathalyzer test as mandated by sec. 343.305, Stats. This statutory scheme does not contemplate a choice, but rather establishes that a defendant will suffer the consequences of revocation should he refuse to submit to the test after having given his implied consent to do so. The defendant's consent is not at issue. The breathalyzer test here represented a reasonable and legal search and seizure under the fourth amendment. We, therefore, again affirm the trial court's ruling.

### III.

The defendant alleges that the trial court erred in finding that the defendant "operated" his vehicle on a highway while under the influence of an intoxicant. He argues that sleeping in a car with the motor running on the side of a highway does not fall within the statutory definition of "operating." Defendant claims that in order to prove operation of a motor vehicle, the state must establish an intent to drive or move the vehicle. He relies on several New Jersey decisions for this proposition. *See State v. Daly,* 64 N.J. 122, 313 A.2d 194 (1973); *State v. Prociuk,* 145 N.J. Super. 570, 368 A.2d 436 (1976).

Section 346.63(3), Stats., defines "operate" and "drive" with respect to a charge of operating while under the influence:

(3) In this section:
(a) "Drive" means the exercise of physical control over the speed and direction of a motor vehicle while it is in motion.
(b) "Operate" means the physical manipulation or activation of any of the controls of a motor vehicle necessary to put it in motion.

Earlier statutory language used "drive" and "operate" interchangeably, and required movement of the vehicle for violation of the statute:

Sec. 346.63(4), Stats. (1975). In this section, unless the context requires otherwise, "drive" or "operate" means exercising physical control over the vehicle's speed and direction *while in motion.* [Emphasis supplied.]

In 1977, the legislature changed the statutory scheme to differentiate between "drive" and "operate" as noted above. 1977 Wis. Laws, ch. 193, effective July 7, 1977.

This court is of the opinion that the defendant's conduct falls within the definition of "operate" and that the trial court's finding was not against the great weight and clear preponderance of the evidence. *Monroe County v. Kruse,* 76 Wis.2d 126, 132, 250 N.W.2d 375, 378 (1977). In construing a statute, the primary source is the language of the statute itself. *Wisconsin's Environmental Decade, Inc. v. Public Service Commission, et al.,* 81 Wis. 2d 344, 350, 260 N.W.2d 712, 715 (1978). In determining the meaning of any single phrase or word in a statute, it is necessary to examine it in light of the entire statute. *State ex rel. Tilkens v. Board of Trustees,* 253 Wis. 371, 373, 34 N.W.2d 248, 249 (1948). Where the statute is ambiguous, we may look to the legislative intent found in the language of the statute in relation to its scope, history, context, subject matter, and object intended to be accomplished. *Wisconsin Environmental Decade, Inc., supra; State v. Wachsmuth,* 73 Wis.2d 318,

324–5, 243 N.W.2d 410, 414 (1976); *Ortman v. Jensen & Johnson, Inc.*, 66 Wis.2d 508, 520, 225 N.W.2d 635, 642 (1975); *State v. Automatic Merchandisers*, 64 Wis. 2d 659, 663, 221 N.W.2d 683, 686 (1974); *Wisconsin Southern Gas Co. v. Public Serv. Comm.*, 57 Wis.2d 643, 648, 205 N.W.2d 403, 406 (1973). The object to be accomplished must be given great weight in determining legislative intent. *Town of Menominee v. Skubitz*, 53 Wis.2d 430, 437, 192 N.W.2d 887, 890 (1972).

The language of sec. 346.63(3), Stats., is clear. The prohibition against the "activation of any of the controls of a motor vehicle necessary to put it in motion" applies either to turning on the ignition or leaving the motor running while the vehicle is in "park." One who enters a vehicle while intoxicated, and does nothing more than start the engine is as much of a threat to himself and the public as one who actually drives while intoxicated. The hazard always exists that the car may be caused to move accidentally, or that the one who starts the car may decide to drive it. This interpretation in our opinion is consistent with the legislative action in amending the statutes to distinguish between the terms "operate" and "drive." This interpretation is also in conformity with the stricter laws adopted by the legislature with respect to intoxicated drivers in Wisconsin. 1977 Wis. Laws, ch. 193. The severity of Wisconsin's drunk driving law is intended to discourage individuals from initially getting behind the wheel of a motor vehicle while under the influence of alcohol. Defendant would have us condone a drunk driver's attempt to drive a car, encouraging the individual to pull over only if unable to continue operation of the vehicle. Defendant thus argues that our interpretation of the statute penalizes one who has the "brains to get off the road." Such a rule, however, would defeat the very purpose of our stricter laws and thwart

legislative intent. The better rule is to have the brains to avoid any attempt to operate a vehicle while intoxicated, not to have the "brains to get off the road."

Several jurisdictions which have dealt with similar issues have held as we do. In *State v. Webb,* 78 Ariz. 8, 274 P.2d 338, 340 (1954), the defendant was intoxicated and asleep in a truck parked near some barricades in a lane of traffic. The statute involved prohibited the actual physical control of a car while under the influence of intoxicating liquor. The defendant claimed that the wording of the statute was not meant to apply to a parked vehicle but was only concerned with driving and other acts of a positive nature. The court disagreed:

An intoxicated person seated behind the steering wheel of a motor vehicle is a threat to the safety and welfare of the public. The danger is less than that involved when the vehicle is actually moving, but it does exist. While at the precise moment defendant was apprehended he may have been exercising no conscious volition with regard to the vehicle, still there is a legitimate inference to be drawn that defendant had of his choice placed himself behind the wheel thereof, and had either started the motor or permitted it to run. He therefore had the "actual physical control" of that vehicle, even though the manner in which such control was exercised resulted in the vehicle's remaining motionless at the time of his apprehension.

*Accord, Parker v. State,* 424 P.2d 997, 999 (Okla. Crim. 1967); *Jacobson v. State,* 551 P.2d 935, 938 (Alaska 1976).

In *State v. Ruona,* 133 Mont. 243, 321 P.2d 615, 618 (1958), the court found that "actual physical control" was not limited to putting the car in motion. We feel that their reasoning is applicable to a similar interpretation of the term "operate," and hold that restraining the movement of a running vehicle constitutes physical manipulation

of a vehicle's controls which falls within the scope of our statute.

Thus one could have "actual physical control" while merely parking or standing still so long as one was keeping the car in restraint or in position to regulate its movements. Preventing a car from moving is as much control and dominion as actually putting the car in motion on the highway. Could one exercise any more regulation over a thing, while bodily present, than prevention of movement or curbing movement. As long as one were physically or bodily able to assert dominion, in the sense of movement, then he has as much control over an object as he would if he were actually driving the vehicle.

Also, we agree with the trial court's finding that the circumstantial evidence in this case was sufficient to substantiate the fact that defendant "operated" his truck within the meaning of sec. 346.63, Stats. The defendant testified that he had driven to the spot where the officers found his truck, stopped there without completely pulling off the highway, left the motor running and the lights on, and then fell asleep. *Commonwealth v. Kloch,* 327 A.2d 375, 384 (Pa. Super. Ct. 1975) involved a factual situation identical to the case before us. The court there noted that in assessing whether the defendant was operating the car while under the influence of an intoxicant, the troopers who found him "could reasonably infer that the car was where it was and was performing as it was because of appellant's choice, from which it followed that appellant was in 'actual physical control' of and so was 'operating' the car while he slept." We agree.

In light of the above, a finding of intent to drive or move the vehicle is not required to find a defendant guilty of operating a vehicle while under the influence of an intoxicant. "Operation" of a vehicle occurs either

when a defendant starts the motor and/or leaves it running. The possibility of danger exists in either case. It is in the best interests of the public and consistent with legislative policy to prohibit one who is intoxicated from attempting to get behind the wheel rather than to make a fine distinction once such a person is in the position to cause considerable harm.

## IV.

Defendant's final argument is that sec. 346.63(3) (b), Stats., is unconstitutional in its application to him, and that no state interest was served by its enforcement. The substance of defendant's constitutional argument is an unsubstantiated and unspecified attack on the statutory procedures specified in sec. 343.305, and sec. 346.63, Stats. We find no merit to this claim. The rule has been often-stated that a statute is presumed to be constitutional and that a heavy burden is placed on the party challenging its constitutionality. *State v. Hart,* 89 Wis.2d 58, 64, 277 N.W.2d 843, 846 (1979).

One who challenges a statute's constitutionality carries a heavy burden of persuasion. He must overcome the presumption of constitutionality described in *State ex rel. Hammermill Paper Co. v. La Plante,* 58 Wis.2d 32, 46, 205 N.W.2d 784 (1973):

". . . It is not enough that respondent establish doubt as to the act's constitutionality nor is it sufficient that respondent establish the unconstitutionality of the act as a probability. Unconstitutionality of the act must be demonstrated beyond a reasonable doubt. Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality. This court has often affirmed the well-established presumption of constitutionality that attaches itself to all legislative acts . . . ."

The court cannot reweigh the facts as found by the legislature. If the court can conceive any facts on which the legislation could reasonably be based, it must hold the legislation constitutional. [Citation omitted.] *State ex rel. Strykowski v. Wilkie,* 81 Wis.2d 491, 506, 261 N.W. 2d 434, 441 (1978).

While the defendant has not specified the grounds on which he bases his constitutional challenge, he implies on equal protection claim by arguing that to penalize one "who has the brains to get off the road" is discriminatory. He appears to urge application of the "strict scrutiny" standard. The "strict scrutiny" standard, however, applies only to classifications involving a suspect category, *Loving v. Virginia,* 388 U.S. 1 (1967), or a fundamental right, *Police Department of the City of Chicago v. Mosley,* 408 U.S. 92 (1972); *Moedern v. McGinnis,* 70 Wis.2d 1056, 1072, 236 N.W.2d 240, 248 (1975). Inasmuch as the issue before us involves neither category, we will apply the "rational basis" test, *i.e.,* the classification will be held valid if there is any rational basis to support it. The discretion afforded state legislatures under this test was discussed in *McGowan v. Maryland,* 366 U.S. 420, 425–6 (1961):

[T]he Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

Our Wisconsin Supreme Court has stated:

The test for finding legislation under the equal protection clauses of either the United States or Wisconsin

Constitution invalid is not merely the determination that some inequality results from a classification but whether there exists any rational and reasonable justification for the classification. [Citation omitted.] *Kallas Millwork Corp. v. Square D Co.,* 66 Wis.2d 382, 388, 225 N.W.2d 454, 458 (1975).

Any reasonable basis for the classification will validate the statute. Equal protection of the law is denied only where the legislature has made irrational or abitrary classification. . . . The basic test is not whether some inequality results from the classification, but whether there exists any reasonable basis to justify the classification.

"Judicial response to a challenged legislative classification requires only that the reviewing court locate some reasonable basis for the classification made. The public policy involved is for the legislature, not the courts, to determine. . . ." [Footnote omitted.] *Omernik v. State,* 64 Wis.2d 6, 18–19, 218 N.W.2d 734, 742 (1974). *Accord, Hart, supra* at 65, 277 N.W.2d at 846–7.

It is this court's responsibility to determine a rationale that reasonably supports the legislative determination. We find it is not arbitrary or invidious for the legislature, having regard for public welfare, to enforce the provisions of secs. 343.305 and 346.63, Stats., against *all* intoxicated persons, not only those who lack the sense "to get off the road."

This court has also considered defendant's arguments as a possible due process challenge. There was no selective denial of due process rights with respect to the defendant. He was given notice, a hearing, and an opportunity to present evidence pursuant to the statutory scheme. He was informed in conformance with all standardized procedures. We, therefore, find no due process violation.

*By the Court.*—Judgment affirmed.