In the MATTER OF the PETITION TO REMOVE John Q. KAMPS from the Office of Town Chairman of the Town of Genesee, Waukesha County, State of Wisconsin: Nancy J. OIMOEN, Petitioner-Appellant,†

v.

John Q. KAMPS, Respondent.

Court of Appeals

*No. 83–1110. Submitted on briefs January 24, 1984.—
Decided March 27, 1984.*
(Also reported in 347 N.W.2d 911.)

For the petitioner-appellant, the cause was submitted on the brief of *Patrick F. Brown* of Waukesha.

† Petition to review denied.

For the respondent, the cause was submitted on the brief of *Dale W. Arenz* of Waukesha.

Before Scott, C.J., Brown, P.J., and Foley, J.

BROWN, P.J. Nancy J. Oimoen appeals the trial judge's refusal to allow her claim for attorney fees. She contends that the attorney fees she incurred in investigating and preparing a petition to remove the town chairman from office should be charged to the Town of Genesee as expenses under sec. 17.16(9), Stats. Because we hold that the term "expenses" as used in sec. 17.16(9) relates solely to the expenses incurred by the "removing power" in administering the removal procedure, we affirm.

Oimoen, clerk of the Town of Genesee, petitioned Judge Neal P. Nettesheim to remove John Q. Kamps from the position of chairman of the Town of Genesee. The judge appointed a special prosecutor to investigate the charges. Following a formal hearing to determine the validity of the charges, the petition was dismissed on the conclusion that removal was not warranted.

Oimoen then filed another petition requesting that the court order the Town of Genesee to pay the attorney fees that she incurred in the investigation and preparation of the petition for removal. The court denied her request for attorney fees, concluding that the only expense chargeable to the Town of Genesee were the expenses and fees of the court-appointed special prosecutor.

Thereafter, Oimoen brought a writ of certiorari contesting the interim rulings of Judge Nettesheim. Subsequently, the circuit court, the Hon. Robert T. McGraw presiding, quashed the writ of certiorari and entered an order affirming Judge Nettesheim's disallowance of Oimoen's claim for attorney fees.

Section 17.16, Stats., explains the proper procedure to follow in seeking the removal of a governmental officer.

Section 17.16 (9), which specifically delineates whose responsibility it is to pay for the expenses incurred in a removal procedure, provides in pertinent part as follows:

In the case of procedure for removals by the governor, all expenses incurred shall be paid upon vouchers duly certified by him and shall be charged to the appropriation provided in s. 20.525. In the case of procedure for removals by any other state officer or body, such expenses shall be paid out of the appropriation to the officer or body invested with power to remove. *In case of procedure for removals by other officers or bodies, the expenses thereof shall be paid by the unit of government of which the person against whom charges are preferred was an officer.* [Emphasis added.]

In construing a statute, the primary source is the language of the statute itself. *County of Milwaukee v. Proegler,* 95 Wis. 2d 614, 625, 291 N.W.2d 608, 613 (Ct. App. 1980). As a reviewing court, we are to give effect to the ordinary and accepted meaning of the statutory language. *County of Walworth v. Spalding,* 111 Wis. 2d 19, 24, 329 N.W.2d 925, 927 (1983). The statute's entire section, as well as related sections, is to be considered. *State v. Clausen,* 105 Wis. 2d 231, 244, 313 N.W.2d 819, 825 (1982).

We begin our analysis by examining the precise language used throughout the various subsections of sec. 17.16, Stats. The language clearly indicates that the "removing power" is the entity that the legislature intended to direct and control the statutory removal procedure.

The power to remove an officer is an executive not a judicial function. *Grob v. Nelson,* 8 Wis. 2d 8, 12–13, 98 N.W.2d 457, 459 (1959). This power, therefore, when conferred upon a judge is not a power of the circuit court, but an exercise of an executive function by a judge. Section 17.16 (3), Stats., states that the governor,

in cases brought before him, may also appoint a commissioner to conduct the hearing, make the investigation and report on the testimony and proceedings. Further, if the charges are brought before a city council having a membership of more than twenty, it may appoint a committee to perform these functions. Hence, the "removing power" consists of those persons to whom the broad duties and responsibilities are conferred by the executive branch, as well as the individuals who assist them in the performance of these duties.

In this instance, the "removing power" consisted of Judge Nettesheim, the special prosecutor and any other persons who may have assisted these two in their investigation of the charges issued against Kamps. Because Judge Nettesheim was acting in an executive role, a review of his actions was properly made by a writ of certiorari to the circuit court. *See State ex rel. Ballard v. Goodland,* 159 Wis. 393, 394, 150 N.W. 488, 489 (1915).

The only action permitted under sec. 17.16, Stats., by anyone other than the removing power is the right of a taxpayer and resident to bring written charges against an officer. But, this limited right simply operates as the mechanism by which the removal procedure contemplated under sec. 17.16 is triggered. It is only after receipt of the written charges that the responsibilities and duties of the removing power become operative. Thus, it logically follows that "expenses" as used in the statute would not include the personal expenses incurred by the person bringing the written charges. Rather, the legislature intended "expenses" to relate solely to the expenses incurred by the removing power subsequent to its receipt of the written charges.

In determining the legislative intent given to a certain word, it is helpful to analyze its use in other subsections

of the same statute. The term "expenses" is used in both sec. 17.16(4) and (9), Stats. On both occasions, "expenses" is modified and restricted in its scope. In sec. 17.16(9), "expenses" is modified by the word "thereof."

Likewise in sec. 17.16(4), Stats., the term "expenses" is again restricted in its scope. In pertinent part, sec. 17.16(4) provides "expenses" for purposes of a bond are clearly limited to those

costs and expenses actually incurred by the state, county or other unit of which the person charged is an officer and by the *removing power in the hearing and investigation of such charges.* [Emphasis added.]

Again, the word "expenses" is restricted to those of the removing power and the unit of government involved in the removal action. This language does not contemplate recovery of expenses incurred by a taxpayer bringing the written charges because such taxpayer's expenses are neither those of the removing power nor those incurred by the unit of government related to its participation in the removal procedure, such as the fees of the town attorney.

Moreover, the problems which would be created if the term "expenses" were broadly interpreted as Oimoen requests were aptly pointed out by Judge Nettesheim. In his decision he stated:

If multiple taxpayers and residents preferred written charges, and each was represented by private counsel, the unit of government would be saddled with the attorneys fees, investigators fees, etc. of each such petitioner. Even in a single petitioner case, the incurring and accumulation of expenses could run unbridled without any superintending authority. This may be precisely why s. 17.16(9), in cases of removals conducted by the Governor, requires the certification of expense vouchers before payment . . . .

Thus, the legislature intended to restrict the governmental obligation for expenses incurred in a removal procedure. The legislature wisely intended the term "expenses" as used in sec. 17.16(9), Stats., to relate solely to the expenses incurred by the removing power in administering the removal procedure.

Oimoen also contends that as a matter of public policy, her attorney fees should be considered expenses within the meaning of sec. 17.16(9), Stats. She contends citizens have a right to be free from an oppressive government and that right includes bringing improper acts of governmental officers to the attention of a removing power without shouldering the costly burden of exercising such right. While the statute does accord a citizen the right to apply for the removal of a public official, this does not automatically give the citizen the right to be compensated for the expenses incurred in exercising that privilege. Just as citizens do not get reimbursed for the expense involved in transporting themselves to the voting booth, here, too, the exercise of this citizenship privilege results in the personal assumption of the expenses incurred.

*By the Court.*—Order affirmed.