## In the
## United States Court of Appeals
### For the Seventh Circuit

No. 11-3495

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARK C. BURGE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 11-cr-30003—**Richard Mills**, *Judge.*

ARGUED APRIL 10, 2012—DECIDED JUNE 27, 2012

Before POSNER, ROVNER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* One December day, defendant Mark Burge's llama escaped from its pen and wandered off. For failing to prevent this escape, Burge was charged with misdemeanor abandonment under the Illinois animal cruelty statute. Rather than hire a lawyer to defend against the charge, Burge chose to plead guilty and pay a $525 fine, likely expecting to put the matter behind him. Three years later, though, Burge

again pled guilty to a crime — this time a federal charge for possession of several hundred marijuana plants — and the llama incident returned with a vengeance. The marijuana conviction called for a mandatory minimum ten years in prison. Yet but for the misdemeanor llama conviction, Burge could have avoided the mandatory minimum by qualifying for the statutory safety valve, see 18 U.S.C. § 3553(f), and his guideline sentencing range would have been 18 to 24 months in prison. The parties and the district court proceeded in the district court on the assumption that the llama conviction should count as one criminal history point. That was his second point and prevented use of the safety valve, which is limited to defendants with no more than one point. Burge was sentenced to ten years.

Burge has appealed. As we explain below, we agree with the government that Burge's llama conviction is similar to misdemeanors listed in subsection 4A1.2(c) of the Sentencing Guidelines as offenses that should not count for any criminal history points. Application of that provision would have allowed the district court to reach the result that it felt was just here, and it was plain error not to do so in these circumstances. We vacate the sentence and remand to allow the court to apply subsection 4A1.2(c) and to consider application of the statutory safety valve to Burge and his sentence.

I. *Factual and Procedural Background*

Mark Burge owned land in central Illinois where he sometimes kept a llama, and where he later cultivated a

patch of more than two hundred marijuana plants. Acting on a tip, police observed the plants first from an airplane and then from the railroad tracks bordering the property. Based on those observations, they obtained a search warrant and then found and seized the marijuana plants and arrested Burge. He was charged with possessing at least one hundred marijuana plants with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The district court denied Burge's motion to suppress evidence, finding that the search warrant was supported by probable cause. Burge then entered a conditional guilty plea that reserved the right to challenge both that ruling and his sentence.

At sentencing, the district court applied the Guidelines, first calculating Burge's offense level to be 15 after a discount for acceptance of responsibility, and then calculating his criminal history category. Burge was assigned, and did not challenge, one criminal history point for a prior felony conviction for possessing firearms without the proper permit and possessing less than thirty grams of marijuana. He was also assigned one point for his prior Class A misdemeanor conviction under 510 ILCS 70/3.01, which states in relevant part that: "no owner may abandon any animal where it may become a public charge or may suffer injury, hunger or exposure."[1] Those two criminal history points put Burge

---

[1] The pre-sentence report did not provide information about the particulars of the conduct underlying this conviction, but

(continued...)

into criminal history category II, raising his guideline sentencing range for offense level 15 from 18-24 months to 21-27 months.

A statutory mandatory minimum sentence trumps the relatively modest guideline range for Burge's offense. 21 U.S.C. § 841(b)(1)(B) requires a sentence of not less than five years for possession of one hundred or more marijuana plants, which is increased to not less than ten years if the defendant (like Burge) has a prior felony drug conviction. Seeing no basis for avoiding the mandatory minimum sentence, the district judge reluctantly sentenced Burge to ten years in federal prison.

II. *The Search Warrant*

Before turning to the sentencing issue, we address briefly Burge's argument that the search warrant was not supported by probable cause. We affirm the district court's ruling on that point and thus affirm Burge's conviction. The search warrant here was based on aerial observation of what appeared to be marijuana plants on Burge's property and by confirmation of those observations on the ground from the border of Burge's property,

---

[1]  (...continued)

the language of the charge made it clear that Burge was charged with abandonment and not the adjacent prohibition against beating, cruelly treating, starving, or overworking an animal. Burge's counsel represented at the sentencing hearing that the alleged "abandonment" involved the llama's escape from its pen.

where the officers had a right to stand and look. Absent some reason to doubt the veracity of the affidavit, the officers' direct observations of what they believed from training and experience to be marijuana plants provided probable cause to issue a search warrant. See, *e.g.*, *California v. Ciraolo*, 476 U.S. 207, 213-14 (1986) (noting that "such observation is precisely what a judicial officer needs to provide a basis for a warrant"). The officers here went beyond what the officers in *Ciraolo* were able to do and corroborated their airborne observations from the ground — identifying the plants again from the edge of Burge's property. We review district court determinations as to the existence of probable cause *de novo*, but we defer more broadly to the underlying determination of the issuing magistrate so long as there was a "substantial basis" for the finding. See *Illinois v. Gates*, 462 U.S. 213, 236 (1983); accord, *United States v. McIntire*, 516 F.3d 576, 578 (7th Cir. 2008). Neither judge erred here. The warrant was supported by probable cause and the resulting evidence was admissible. Burge's conviction stands.

III. *Safety Valve Eligibility*

The ten-year mandatory minimum sentence was correct unless Burge qualified for the safety valve under section 3553(f). He can qualify only if his llama conviction does not count as a criminal history point. On appeal, Burge has argued that his llama conviction should not count because he did not have an attorney and was actually innocent of the crime. The district

court correctly rejected these arguments. Controlling precedents from the Supreme Court and our court barred Burge from re-litigating the validity of the llama conviction. *Custis v. United States*, 511 U.S. 485, 490-91 (1994), limited the scope of collateral attacks on state convictions during federal sentencing, and *Nichols v. United States*, 511 U.S. 738, 749 (1994), held that uncounseled misdemeanor convictions that did not result in a prison term can be counted in sentencing. See also *United States v. Katalinich*, 113 F.3d 1475, 1481 (7th Cir. 1997) (applying *Nichols*)*; United States v. Hoggard*, 61 F.3d 540, 542-43 (7th Cir. 1995) (applying *Custis* and noting the presumption of regularity that applies to state judicial proceedings in this context). Burge has argued that we should reconsider these precedents, but of course we are not empowered to overrule the Supreme Court or to refuse to apply its holdings to indistinguishable situations.

As it turns out, however, a much better argument was available to Burge. Subsection 4A1.2(c) of the Guidelines directs courts not to count prior offenses as criminal history points if they are "similar to" certain listed crimes that are themselves never counted. After we raised the issue during oral argument, the parties submitted supplemental briefs. In the finest tradition of the Department of Justice, the government's supplemental brief carefully analyzed the subsection and ultimately recommended that we remand for re-sentencing. We track much of that analysis in our discussion of the issue.

Absent "significant procedural error," we ordinarily review the reasonableness of a district court's sentence

under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Scott*, 555 F.3d 605, 608 (7th Cir. 2009). Applications of the Sentencing Guidelines, on the other hand, are reviewed *de novo*, with deference given to the district court's factual findings. *E.g., United States v. Samuels*, 521 F.3d 804, 815 (7th Cir. 2008). If the district court had made a legal determination that Burge's llama conviction did (or did not) qualify to be counted in the criminal history calculation, we would review *de novo* that application of the law to facts. See *United States v. Garrett*, 528 F.3d 525, 527 (7th Cir. 2008); *United States v. King*, 506 F.3d 532, 536 (7th Cir. 2007). But Burge did not raise subsection 4A1.2(c) of the Guidelines with the district court or in his initial appeal briefs.

If the omission was intentional, that would be a waiver that would bar our consideration of the issue, but if the omission was a negligent oversight, the issue would have been only forfeited, allowing review for plain error. *E.g., United States v. Anderson*, 604 F.3d 997, 1001 (7th Cir. 2010). The government has not proposed any strategic justification that might suggest an affirmative waiver of the issue, see *id.* at 1001-02, and in any event, the government has voluntarily "waived waiver" in the supplemental briefing. We find that Burge did not waive but merely forfeited arguments concerning subsection 4A1.2(c), and so we review for plain error. *Id.* at 1001; *Garrett*, 528 F.3d at 527. Plain error review requires a showing that: (1) the district court erred, (2) the error was plain (meaning "clear" or "obvious"), and (3) the error affected the defendant's substantial rights. See *United States v. Olano*, 507 U.S. 725, 732-34 (1993).

We consider the third point first. While Burge's criminal history was light, it was just enough to disqualify him from the statutory safety valve if the llama conviction counted as a criminal history point. The district court's comments at sentencing show that the treatment of the llama conviction had a substantial, even dramatic, effect on Burge's sentence. The judge believed that a much lower guideline-range sentence would have been sufficient to serve the purposes of sentencing. We can presume that substantial rights are affected when an error results in an incorrectly calculated guideline range, at least in the absence of a contrary indication from the district court. See *Garrett*, 528 F.3d at 527 ("a mistake in that calculation warrants resentencing"). In light of both that presumption and the judge's comments, the effect on Burge's rights is clear.

Was there an error? The district court did not need to revisit or invalidate the llama conviction to decline to count it as one criminal history point. Instead, the court only needed to analyze whether the conviction was sufficiently similar to one of the listed offenses in subsection 4A1.2(c) that are not counted toward criminal history under the Guidelines. The statutory requirement that the safety valve applies only to defendants who have no more than one criminal history point means that this aspect of the Guidelines is incorporated into the statutory standard: points must be "determined under the sentencing guidelines." 18 U.S.C. § 3553(f)(1). The Guidelines instruct district courts how to calculate a defendant's criminal history category in section 4A1.1, and they define relevant inputs to the

calculation in section 4A1.2. The calculations are fact-driven and formulaic, but the definitions regarding the counting of certain misdemeanor offenses are open-ended enough to require some judgment in their application.

Subsection 4A1.2(c) instructs that prior felony sentences are always counted in computing criminal history. Prior misdemeanors are counted unless they fall within 4A1.2(c)(1) or (c)(2). Each paragraph includes a long list of offenses. Paragraph (c)(1) lists disturbing the peace, contempt of court, prostitution, trespassing, resisting arrest, and others. Paragraph (c)(2) lists fish and game violations, loitering, minor traffic violations such as speeding, and several others. Each of these paragraphs also applies to "offenses similar to" those listed.[2]

Since 2007, the Guidelines have included an Application Note directing a "common sense approach" to determine whether an unlisted offense is similar to one included in subsection 4A1.2(c). United States Sentencing Guidelines Manual § 4A1.2, commentary, note 12(A). Even before adoption of Application Note 12, our case law had required such an approach. See *United*

---

[2] Because Burge's llama conviction and sentence (a $525 fine) did not involve "a term of probation of more than one year or a term of imprisonment of at least thirty days" and was not "similar to an instant offense," it does not count as a criminal history point if similar to the offenses listed in paragraph 4A1.2(c)(1). If it is similar to the offenses listed in 4A1.2(c)(2) — which are never counted regardless of the sentence imposed or resemblance to an instant offense — it also does not count.

*States v. Booker*, 71 F.3d 685, 689 (7th Cir. 1995). Among the factors to be considered are: (1) a comparison of punishments imposed for the listed and unlisted offenses, (2) the perceived seriousness of the offense as indicated by the level of punishment, (3) the elements of the offense, (4) the level of culpability involved, and (5) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct. *Id.*, quoting *United States v. Hardeman*, 933 F.2d 278, 281 (5th Cir. 1991); cf. *United States v. Caputo*, 978 F.2d 972, 977 (7th Cir. 1992) (refusing to ignore an offense deemed "categorically more serious" than the listed crimes).

We conclude that abandonment of a llama in violation of 510 ILCS 70/3.01 is sufficiently similar to a listed offense that it should not be counted as a criminal history point. The most promising analog listed in subsection 4A1.2(c) is "fish and game violations." The Illinois Wildlife Code contains a number of violations with similar penalties, some of which are designed in part to address actual and potential cruel treatment of animals. For instance, the code prohibits certain harsh trapping techniques such as the use of snares, deadfalls, or pit traps. See 520 ILCS 5/2.33(b). Also, it is a Class A misdemeanor in Illinois to use poisons, chemicals, or explosives to kill wildlife, or to harass wildlife by using a vehicle. See 520 ILCS 5/2.33(g), (i). If Burge had poisoned his llama instead of merely allowing it to escape, he could have been subject to the same or a similar penalty in state court, but subsection 4A1.2(c) would have barred counting a criminal history point and would have left

him eligible for the statutory safety valve on his federal conviction.

The government suggests that the most similar Illinois fish and game violation to animal cruelty by way of abandonment is the prohibition on leaving captured animals in hunting traps in violation of 520 ILCS 5/2.33a(a). We agree. That violation would be a Class B misdemeanor and would carry a maximum sentence of six months in custody and a maximum fine of $1,500. See 730 ILCS 5/5-4.5-60. Burge's llama conviction was not more serious than such Illinois game violations. Recall that Burge paid a $525 fine and served no time in jail. We recognize that the Illinois animal cruelty statute includes provisions that could reach truly disturbing conduct, including merciless beating and torture of animals. Our reasoning today does not address such crimes. In this case, however, Burge's level of culpability (a factor in our analysis) is dramatically less severe. In addition, nothing about the llama incident suggests a likelihood of recurring criminal conduct (another factor). We have said that "the actual offense conduct and the actual penalty deemed appropriate by the sentencing court" are more significant to the analysis than the abstract elements of the offenses or the ranges of possible punishments. See *Booker*, 71 F.3d at 689. Here, Burge's conduct and penalty were consistent with a minor regulatory violation and do not suggest violence or depravity. In short, Burge's llama conviction is similar to fish and game offenses listed in paragraph 4A1.2(c)(2) and should not have been counted as a criminal history point in the district court's calculations.

Was the error plain? We have treated failure to recognize that a similar offense is excludable under subsection 4A1.2(c) as a plain error in previous cases. See, *e.g.*, *Garrett*, 528 F.3d at 529 (plain error to count a conviction for bail jumping given its similarity to a listed contempt charge); *United States v. Hagenow*, 423 F.3d 638, 646-47 (7th Cir. 2005) (plain error to count a conviction for possessing a police scanner given its similarity to listed offenses of hindering or resisting police); see also *United States v. Spears*, 159 F.3d 1081, 1088 (7th Cir. 1998) (plain error to count juvenile convictions properly excludable under subsection 4A1.2(d)).

The practical effect of treating such errors as plain errors is to impose on district courts (with the help of probation officers) an independent duty to consider whether prior offenses are listed in, or similar to those listed in, subsection 4A1.2(c), at least when the offense in question may have a significant effect on the guideline calculation. This obligation is consistent with and part of the general duty to apply the Guidelines. See *United States v. Booker*, 543 U.S. 220, 264 (2005) ("district courts must consult the Guidelines and take them into account when sentencing"); 18 U.S.C. § 3553(a)(4). That duty exists even though the Guidelines are ultimately only advisory. See *United States v. Hawk*, 434 F.3d 959, 963 (7th Cir. 2006). When a mandatory minimum sentence statute threatens to control the final outcome, the availability of the section 3553(f) safety valve may make it even more important that the defendant's criminal history points be calculated correctly.

Courts of appeals are not required to correct all errors even if they qualify as "plain." Rule 52(b) of the Federal Rules of Criminal Procedure provides us with discretion to "correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Olano*, 507 U.S. at 736, quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936). The government has urged us to exercise this discretion in Burge's favor and to remand for resentencing, and again we agree. We have no trouble seeing the serious impact on the fairness of the proceedings here. This situation is comparable to and perhaps even more compelling than those cases where the improper classification of a prior offense as a crime of violence can cause a similarly dramatic increase in a sentence. See, *e.g.*, *United States v. Jaimes-Jaimes*, 406 F.3d 845, 851 (7th Cir. 2005) ("it would be unjust to place the entire burden for these oversights on [defendant] by permitting him to serve an excessive prison sentence").

Burge received ten years in prison instead of the two years or less that the Guidelines would have advised. No one, including the district judge, the prosecuting attorneys, defense counsel, or this court, found that result to be appropriate under all the circumstances. And Congress has not compelled that result, at least if the safety valve applies. In subsection 4A1.2(c), the Guidelines provide examples rather than an exhaustive list of prior offenses that should not count as criminal history points. This permits district courts to use their judgment in situations involving unusual offenses, such as negligent abandonment of a llama. It

would be manifestly unjust (and perhaps unbearably ironic) for Burge to serve eight or more additional years in a federal penitentiary because he once allowed his llama to escape from its pen. The district court plainly erred in failing to exclude Burge's llama abandonment conviction under subsection 4A1.2(c). The error seriously affected Burge's rights and the fairness of the proceedings such that a remand for re-sentencing is required.

Even with his criminal history points reduced to one—allowing him to meet the requirement of 18 U.S.C. § 3553(f)(1) — Burge must still qualify under the other provisions of subsection 3553(f). Only the fifth requirement might be at issue. Per paragraph 3553(f)(5), Burge must have "truthfully provided to the Government all information and evidence" that he had "concerning the offense . . . ." The district court did not decide whether Burge met the truthful information requirement. Although there are indications in the record that he did so, we do not have findings or a full record on which to decide the issue ourselves in the first instance. The district court should address the issue on remand. Burge's conviction is AFFIRMED, but his sentence is VACATED and the case is REMANDED for re-sentencing.