NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 5, 2013
Decided April 1, 2013

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 12-3183

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 12-CR-10 |
| BERTRAND EDWARDS, *Defendant-Appellant.* | Barbara B. Crabb, *Judge.* |

**O R D E R**

Bertrand Edwards appeals the denial of his motion to suppress evidence discovered during a warrantless search of his vehicle incident to arrest. He had been arrested for operating a vehicle under the influence of marijuana, *see* WIS. STAT. § 346.63(1)(a), but the subsequent search of the car uncovered evidence of counterfeiting—a scanner, a straight-edge paper cutter, household chemical solvents, a pen used to detect counterfeit currency, and counterfeit twenty-dollar bills. He ultimately pleaded guilty to passing counterfeit

currency. *See* 18 U.S.C. § 472. Because the officer had probable cause to arrest Edwards—for either operating a vehicle while under the influence of marijuana, or possession of marijuana, *see* WIS. STAT. § 961.41(3g)(e)—we affirm the judgment.

**Background**

Around 4:00 a.m. on October 5, 2011, the Dunn County Sheriff's Department received information from the Jackson County Sheriff's Department that around an hour earlier an individual in a green Chevrolet Blazer drove off without paying for gas in Black River Falls, Wisconsin. The information included the Blazer's license plate number and the suspect's description—a black man with dreadlocks. Within minutes Deputy Chad Pollock located the Blazer parked askew between two spots in a rest area off I-94 near Menomonie, Wisconsin (about 75 miles from Black River Falls).

When Deputy Pollock approached the Blazer, he saw Edwards—who matched the reported description—sleeping behind the wheel; Pollock also noted that the vehicle's hood was still warm. He woke Edwards, who told him that he had pulled off the highway only about ten minutes earlier. Deputy Pollock observed that Edwards's eyes were bloodshot, his pupils dilated, his speech slow and mumbled, and his responses to questions delayed. He also wrote in his police report that he detected the "odor of stale marijuana coming from the vehicle."

Deputy Pollock asked Edwards to get out of the Blazer and then noticed an opened bottle of beer and fresh ash spread across the floorboard, center console, and seats. On the floorboards he also saw what he considered "shake" (small leafy bits of marijuana that gather at the bottom of the plastic bags in which that drug is often sold, *see* http://en.wiktionary.org/wiki/shake). Deputy Pollock noted that Edwards's coordination was poor as he exited the Blazer, though he denied having used any illegal drugs and said he had consumed only a few drinks earlier that evening. Suspecting that Edwards was intoxicated, Deputy Pollock administered a series of field-sobriety tests. During all these tests, Edwards swayed, failed to follow directions, and was uncoordinated. Edwards's preliminary breath test, however, showed zero percent blood alcohol content. Based on the field-sobriety tests, the marijuana odor in the vehicle, and the shake on the Blazer's floor, Deputy Pollock arrested Edwards for operating a vehicle under the influence of marijuana.

Deputy Pollock then began a search of the Blazer, as he put it in his police report, "for evidence supporting the arrest for Operating Under the Influence of Drugs." During the search Deputy Pollock noted that Edwards appeared nervous and repeatedly told him that the car did not belong to him and that he did not know what was in it. Deputy Pollock

found white sheets of paper with U.S. currency printed on one side, as well as counterfeit bills—some of which were damp (from having been recently printed, Deputy Pollock suspected). He also discovered a straight-edge paper cutter, household chemical solvents, and a pen used to detect counterfeit currency. Finally, in the back seat under a blanket, he uncovered an inkjet printer/scanner. Under the scanner's lid was a "real" twenty-dollar bill bearing the same serial number as several of the counterfeit bills. Another counterfeit bill with this same serial number had been passed off the previous day at a convenience store; store employees reported that an individual, later identified in a surveillance video as Edwards, had used the bill to buy cigarettes. That same day Edwards also used bills with the same serial number at a restaurant.

Edwards was charged with one count of making counterfeit currency, *see* 18 U.S.C. § 471, and two counts of passing counterfeit currency, *see id.* § 472. He moved to quash his arrest and suppress the evidence discovered during the search. The parties did not dispute the facts surrounding the arrest or search and so agreed to proceed without an evidentiary hearing.

Edwards's motion to suppress was denied by the district judge, who adopted the magistrate judge's report and recommendation. The magistrate judge concluded that Deputy Pollock had probable cause to arrest Edwards for operating a vehicle under the influence of marijuana, and alternatively, could have arrested him for possession of marijuana. The district judge agreed, concluding that the signs of impairment Edwards exhibited, the marijuana odor, Edwards's poor performance on field-sobriety tests, and the shake on the vehicle's floorboards provided probable cause for Deputy Pollock to arrest Edwards for either crime. Incident to arresting Edwards, Deputy Pollock was entitled to search the vehicle for further evidence of marijuana or other drugs.

Edwards then pleaded guilty to one count of passing counterfeit currency, but reserved in his plea agreement the right to appeal his motion to suppress. The district judge accepted Edwards's plea and sentenced him to 24 months' imprisonment.

## Analysis

On appeal Edwards argues that Deputy Pollock lacked probable cause to arrest him either (1) for operating a vehicle under the influence of marijuana or (2) for possessing marijuana, and thus could not lawfully search the Blazer under the exception to the Fourth Amendment's warrant requirement for searches incident to arrest. *See Arizona v. Gant*, 556 U.S. 332, 343–44 (2009); *see also United States v. Slone*, 636 F.3d 845, 851–52 (7th Cir. 2011); *United States v. Stotler*, 591 F.3d 935, 939 (7th Cir. 2010). Responding to the former charge, he contends that Deputy Pollock did not have probable cause to arrest him for operating a

vehicle under the influence of marijuana because Pollock had no reason to believe that he was under the influence of any substance (rather than simply being groggy from taking a nap).

The district judge, however, was right that the signs of impairment exhibited by Edwards coupled with the signs of marijuana use were sufficient to establish probable cause that Edwards had operated a vehicle under the influence. Indeed the general signs of intoxication Edwards exhibited (his slow speech, delayed responses, bloodshot eyes, and poor performance on field-sobriety tests) could alone have justified Deputy Pollock's decision to arrest him. *See Smith v. Ball State Univ.*, 295 F.3d 763, 766, 770 (7th Cir. 2002); *Qian v. Kautz*, 168 F.3d 949, 954 (7th Cir. 1999); *Tatum v. City and Cnty. of San Francisco*, 441 F.3d 1090, 1095 (9th Cir. 2006). And though Edwards's grogginess *may* also have produced these symptoms, "the possibility of an innocent explanation does not vitiate properly established probable cause." *United States v. Booker*, 612 F.3d 596, 601 (7th Cir. 2010); *United States v. Funches*, 327 F.3d 582, 586–87 (7th Cir. 2003). Moreover, Deputy Pollock had even more evidence specific to marijuana use (the odor of marijuana in the Blazer and the presence of ash and shake) that further justified his arrest of Edwards. *See Padula v. Leimbach*, 656 F.3d 595, 601 (7th Cir. 2011); *United States v. Chavez*, 660 F.3d 1215, 1224–25 (10th Cir. 2011).

Edwards raises a second challenge to the arrest for operating a vehicle under the influence, namely that Deputy Pollock lacked probable cause to conclude that he was ever impaired while operating the Blazer. But it does not matter that Deputy Pollock did not actually see Edwards drive the Blazer or even put the keys in the ignition (operation of a vehicle requires, at a minimum, physically manipulating or activating the controls of a motor vehicle, for example by leaving the motor running while a car is parked, *see* WIS. STAT. § 346.63(3)(b); *Milwaukee Cnty. v. Proegler*, 291 N.W.2d 608, 613 (Wis. Ct. App. 1980); *State v. Mertes*, 762 N.W.2d 813, 817–18 (Wis. Ct. App. 2008)). Even if it were conceivable (as Edwards suggests) that he did not ingest marijuana till after he stopped at the rest area and turned off his vehicle, *see* C. Heather Ashton, *Pharmacology and Effects of Cannabis: A Brief Review*, 178 BRIT. J. PSYCHIATRY 101, 102 (2001) (marijuana's "effects are perceptible within seconds and fully apparent within a few minutes"), Deputy Pollock could reasonably rely on circumstantial evidence (the Blazer's warm hood and Edwards's admission that he had pulled into the rest area only ten minutes earlier) to conclude that Edwards recently operated the vehicle while under the influence of marijuana. *See Burg ex rel. Weichert v. Cincinnati Cas. Ins. Co.*, 645 N.W.2d 880, 886 n.8 (Wis. 2002); *Mertes*, 762 N.W.2d at 817–18. That reasonable belief, rather than certainty, is all that probable cause requires. *See United States v. Schaafsma*, 318 F.3d 718, 722 (7th Cir. 2003); *see also Purvis v. Oest*, 614 F.3d 713, 722–23 (7th Cir. 2010).

Edwards next contests the district judge's alternative finding that Deputy Pollock could also lawfully have arrested him for possession of marijuana. He maintains that he denied having smoked marijuana, and argues that Deputy Pollock should have asked him about the leafy bits and remains on the floorboards before concluding that they were shake.

But, though Deputy Pollock was required to "pursue reasonable avenues of investigation" and could not ignore evidence that might clarify whether what he saw was marijuana, he was entitled to end any investigation once he established probable cause. *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009); *see also Sow v. Fortville Police Dep't*, 636 F.3d 293, 302 (7th Cir. 2011). Deputy Pollock—who had 7 years' law enforcement field experience and specialized training on topics related to drug recognition, narcotics, and impaired driving—could reasonably have believed that what he observed on the floorboards of the Blazer was shake (rather than tobacco for example) based on his training, the marijuana odor, and Edwards's appearance and behavior (which were consistent with marijuana use). *See United States v. Burge*, 683 F.3d 829, 832 (7th Cir. 2012) (probable cause to support search warrant where officers were able to identify marijuana plants based on training and experience); *United States v. Mosby*, 541 F.3d 764, 768 (7th Cir. 2008) (probable cause to search passenger compartment of car based on marijuana odor alone); *Warlick v. Cross*, 969 F.2d 303, 309–10 (7th Cir. 1992) (probable cause for arrest based on presence of hand-rolled cigarettes combined with corroborating evidence like odor of marijuana). He therefore could lawfully have arrested Edwards for possession without investigating further.

Because Deputy Pollock had probable cause to arrest Edwards, we **AFFIRM** the judgment of the district court.