PARR, by Guardian *ad litem,* and others, Respondents, vs. DOUGLAS and others, Appellants.*

*September 15—October 12, 1948.*

---

* Motion for rehearing denied, with $25 costs, on December 15, 1948.

312

For the appellants Lowell Douglas and Farmers Mutual Automobile Insurance Company there was a brief by *Fisher, Reinholdt & Peickert* of Stevens Point, and *Robert H. Gollmar* of Baraboo, attorney for Lowell Douglas, individually, and oral argument by *R. T. Reinholdt* and *Clifford Peickert.*

For the appellants C. J. Neuendorf, W. G. Neuendorf, E. H. Pries, and New York Casualty Company there were briefs by *Langer & Cross* of Baraboo, and oral argument by *C. C. Cross* and *H. M. Langer.*

For the respondents there was a brief by *Roberts, Roe & Boardman,* attorneys, and *Walter M. Bjork* of counsel, all of Madison, and oral argument by *Mr. Glenn D. Roberts* and *Mr. Bjork.*

MARTIN, J. By its special verdict the jury found that Lowell Douglas was causally negligent as to lookout; that he was not negligent as to his rate of speed or in the management and control of his automobile. They further found that he was negligent in failing to exercise the degree of skill and care which he possessed in respect to the management and control

of his vehicle, but that this negligence was not a cause of the collision.

The jury found the Neuendorf Transportation Company causally negligent, through its agent or employee, in respect to operating its vehicle upon the highway with a truck-tractor in tow so as to conceal visibility of the rear taillight, stop light, or reflectors of the trailer; in respect to failing to provide any red taillight and stop light upon the rear of the truck-tractor in tow; in respect to driving upon the highway a vehicle having attached thereto more than one other vehicle; and in respect to driving upon the highway a combination of vehicles having an over-all length in excess of forty-five feet. It exonerated the company of negligence in respect to operating its vehicles on the roadway when the lead truck-tractor was not in proper operating condition, but found that this was a cause of the accident.

Comparative negligence was apportioned ten per cent to Lowell Douglas and ninety per cent to Neuendorf Transportation Company. Since the trial court properly, as we later hold, did not submit any question concerning the contributory negligence of Delores Parr, we are not here concerned with the propriety of the percentages. It is enough that the jury found each defendant negligent in some respect. These observations also dispose of a contention that the jury's verdict is inconsistent in that they found in answer to one question that Lowell Douglas was negligent in failing to exercise the degree of skill and care which he possessed in respect to the management and control of his vehicle and in another that he was not guilty of negligence in respect to management and control. These matters are immaterial because the finding that Douglas was guilty of causal negligence as to lookout is sustained by the evidence and because the finding that the Neuendorf Transportation Company was negligent in operating its vehicle upon the highway without taillights and stop lights upon the rear of the truck-tractor in tow was also sustained by the evidence.

Our conclusion that the finding of negligent lookout on the part of Douglas is sustained is based upon the following evidence:

The occupants of the Hardell car, which was directly behind the Douglas automobile, testified that Douglas continued along at the same rate of speed, forty to forty-five miles per hour, made no apparent effort to avoid the truck until immediately before the collision, and that he then attempted to turn out but it was too late.

The conclusion that the Neuendorf Transportation Company was negligent in respect to lighting the rear of its caravan is sustained by the evidence.

There is no testimony in the record to the effect that there was ever a taillight lit and a stop light or reflector on the rear of defendant's towed tractor.

E. H. Pries, one of the partners of the Neuendorf Transportation Company and in charge of the Medford terminal, testified that he checked the lighting equipment on the train of vehicles on the day of the accident and that there was a taillight on the rear tractor. Neither the driver of the truck nor the mechanic riding with him ever checked to see if there was a taillight, stop light, or reflector on the towed tractor. At no time did they testify that a taillight was lit or that they turned it on. The only testimony is that the parking lights of the towed tractor, which are small lights above the headlights, were lit. The occupants of the Hardell car did not see a taillight on the towed tractor. The police officer made a search for the taillight bracket after the accident but found none. His testimony is that there were only some wires hanging loose and some glass was picked up but this glass is not identified. This testimony is not sufficient to raise a presumption that the taillight on the towed tractor was lit at any time, and the court properly refused to give the instructions requested by defendant Neuendorf.

The lights on the trailer, or center vehicle of the train, were lit but these lights were obscured in part by the towed tractor chained flush against the rear of the trailer. The only visible lights were those at the top of the trailer. Its stop light and taillight could not be seen and therefore served no purpose as a warning to oncoming vehicles. The lights above the trailer could at best be confusing.

Motor vehicle department general order MVD–205, as authorized by sec. 85.06 (4), Stats., requires a trailer to carry a tail lamp, a stop light, red clearance lights on each side, and red lights or reflectors low on each side. A truck-tractor is required to have only a taillight and stop light. Additional light requirements are established by sec. 85.45 (4) on an overlength vehicle train.

Sec. 85.06 (6), Stats., provides that a failure to comply with the foregoing standards shall be *prima facie* evidence of unsafe practices in the use of the public highway by such vehicles. Sec. 85.06 is obviously a safety statute and a failure to comply therewith is negligence *per se*. This court has frequently and consistently held that when the legislature enacts a safety statute it establishes a standard of care to be exercised and liability for injury resulting from a violation of the standard follows. *Butts v. Ward* (1938), 227 Wis. 387, 279 N. W. 6.

Defendants next contend that the court erred in refusing to submit a question as to the negligence of plaintiff, Delores Parr. The trial of this case produced no evidence of any neglect on the part of said plaintiff and as is said in *Smith v. Green Bay* (1937), 223 Wis. 427, 271 N. W. 28, the burden of proof is upon the defendants to prove the negligence of the plaintiff. The presumption is that the plaintiff took proper precaution and defendants have not overcome this presumption.

Defendant Neuendorf complains of the form of the question of the special verdict having to do with the carrying of tail and

stop lights upon the rear of the truck-tractor. The objection to this question is that the jury were asked to find whether there was negligence "in respect to failing to provide" and that this form of question assumes that there was no taillight which was the very question sought to be submitted.

This was not prejudicially erroneous because the questions relating to lighting on the rear of the truck-tractor in tow presented to the jury do not assume that there was no taillight and stop light upon the rear of the towed tractor. The jury could answer these questions either "Yes" or "No" and they answered them "Yes" or, in other words, finding Neuendorf Transportation Company negligent in respect to failing to provide any red taillight and stop light upon the rear of the truck-tractor in tow and that this negligence was a cause of the collision. We find that their decision is amply sustained by the evidence.

It is finally contended that the damages awarded to Delores Parr were grossly excessive.

At the time of the accident Delores Parr was just under sixteen years of age. The evidence shows that she sustained injuries and bore much suffering as a result of this accident.

A piece of metal three inches long and one-half inch wide was driven in between the right eyeball and the bridge of the nose, cutting the medial muscle of the eyeball, and was firmly embedded in the right orbit or cavity in the skull that holds the right eyeball. It cut the upper lid pressing the upper lid back into the eye socket and lacerated the lid so it was hanging by one piece on the outer side. The lower lid was dropping below the eyeball leaving the eyeball completely exposed. She suffered a comminuted fracture of the nose, lacerations to the bone, about three to four inches long, on the right forearm near the wrist, and also deep lacerations on the right leg.

Immediately after the accident she was removed to a hospital at Portage where the piece of metal was removed and a partial job was done in removing foreign material from behind

and around the eyeball. The lacerations on her leg and arm were sutured. Two days later, March 9, 1946, she was admitted to Wisconsin General Hospital and put under the care of a licensed physician and surgeon specializing in ophthalmology. Another piece of metal, several pieces of glass and other foreign material were removed from the rear of the eyeball. The doctors feared infection and she was administered over two hundred shots of penicillin during the first two weeks at three-hour intervals, and the next three weeks at four-hour intervals. She had six or seven anesthetics and was nauseated each time.

The right cheekbone was broken and pushed back and down. A plastic surgeon removed a piece of bone from Miss Parr's hipbone and grafted it to her cheekbone in order to try to raise her right eye to its former level. He also removed a number of scars and tattoo marks, black grease, and oil ground into the skin, from the patient.

The evidence shows that Miss Parr at the time of the trial had undergone seven operations and had spent a total of eighty-five days in the hospital. Her attending doctors testified that a minimum of three more operations would be necessary and would require at least fifteen more days of hospitalization.

Miss Parr has a permanent impairment of vision in her right eye and there is nothing that can be done to improve it. The central vision is entirely gone and she is able to do little more than distinguish light from dark in her side vision. The eye is not in a fixed position but it does not move in normally. It turns out and is known as a "walleye." An operation is contemplated to straighten this eye but the doctor is doubtful of the result. He termed this eye a blind eye and stated, "In some years in the future it may turn again. Most blind eyes usually turn."

The tear duct carrying the tears from the lower right lid was damaged beyond repair. This condition is permanent. As a result tears flow from her right eye and fall upon her cheek.

It is necessary for her to have a handkerchief available at all times and in cold weather her cheek is inclined to become red and chapped.

Miss Parr has a permanent jagged scar about four inches long on her right wrist.

She testified that when her good left eye becomes tired from overwork, it becomes swollen and red and the following day she has a headache. The doctor stated that all one-eyed people should wear glasses as protection to the good eye. There is always danger that the good eye may be damaged or lost, in which case partial or total blindness results.

The attending physicians' principal work will be to have the eye operate normally but the plastic surgeon testified, "There is always a question as to whether or not there will be function in the eye. . . . I can't say how much function of the lids nor of the eye there will be at the end."

She will have a permanent cosmetic injury as it will be possible to remove only some of the marks and scars. There are several ligaments on the right side of the nose which can never be repaired. She has lost some of her eyelashes that are very difficult to replace and the plastic surgeon testified that the tissues normally attached to the side wall of the nose are "almost impossible to reconstruct."

All medical expenses, including the doctor and hospital bills for the prospective operations and treatment and all the other special damages and expenses of Miss Parr and her parents, were stipulated to by counsel at $2,850.

Miss Parr was crying and sobbing with pain at the scene of the accident, and the periods of consciousness after the accident permitted her to recall her trip to the hospital and the agony of her condition. It is impossible to describe, but necessary to consider, the pain and suffering incidental to each operation and her long period of hospital confinement.

In addition to her physical injury and its permanent physical effects, the accident from a psychological standpoint would

also cause a permanent mental injury.    Her ability to enjoy life and earn her own living has been seriously impaired.

After the verdict was returned and full discussion orally and by briefs of counsel on motions after verdict, the trial court stated in its decision:

"I have examined the authorities submitted and have reviewed the evidence as to the injuries, pain and suffering, both past, present and future, and having personally observed the plaintiff, Delores Parr, during the several days of trial, I have concluded that the damages herein are not excessive and that the court should not interfere with the jury's determination thereof."

It is stated in 25 C. J. S., Damages, p. 641, sec. 93:

"There is no standard by which physical pain and suffering may be measured and compensated for in money.    It can only be said that an award of damages therefor should be estimated in a fair and reasonable manner, and not by any sentimental or fanciful standard, and should constitute a reasonable compensation to plaintiff on the facts disclosed by the evidence.    The jury are entitled to consider the length of plaintiff's suffering, the nature of the injury, the age, health, habits, and pursuits of plaintiff."

The general rule on the matter of damages is found in 15 Am. Jur., Damages, p. 621, sec. 205:

"In actions sounding in damages merely, where the law furnishes no legal rule for measuring them, the amount to be awarded rests largely in the discretion of the jury, and with their verdict the courts are reluctant to interfere.    As shown elsewhere, a verdict may be set aside as excessive by the trial court or on appeal when, and not unless, it is so clearly excessive as to indicate that it was the result of passion, prejudice, or corruption, or it is clear that the jury disregarded the evidence or the rules of law. . . .

"Since it is for the jury, and not for the court, to fix the amount of the damages, their verdict in an action for unliquidated damages will not be set aside merely because it is large or because the reviewing court would have awarded less.    Full

compensation is impossible in the abstract, and different individuals will vary in their estimate of the sum which will be a just pecuniary compensation. Hence, all that the court can do is to see that the jury approximates a sane estimate, or, as it is sometimes said, see that the results attained do not shock the judicial conscience. . . ."

Defendants have cited a number of cases to sustain their position that the damages are excessive. However, every case must be determined on its own merits and in this case we have a fifteen-year-old girl with injuries different and additional to those referred to. There was no dispute at the time of the trial as to the injuries of Delores Parr, despite the seriousness of such injuries. The medical testimony of the plaintiffs is not contradicted.

It was stated in *Zeinemann v. Gasser* (1947), 251 Wis. 238, 247, 29 N. W. (2d) 49:

"The jury had a right to award damages based on economic conditions existing at the time the verdict was rendered, and this court will give recognition to economic conditions in reviewing verdicts so rendered."

Under all the facts, we are unable to say the verdict is excessive.

*By the Court.*—Judgment affirmed.