MARTIN, Appellant, v. ALLSTATE INSURANCE COMPANY and another, Respondents.

*No. 42.   Argued January 5, 1970.—Decided February 6, 1970.*
(Also reported in 173 N. W. 2d 646.)

658

For the appellant there was a brief by *Peregrine, Schimenz, Marcuvitz & Cameron* and *Robert J. Penegor*, all of Milwaukee, and oral argument by *Mr. Penegor*.

For the respondents there was a brief and oral argument by *David B. Halling* of Milwaukee.

ROBERT W. HANSEN, J.   A new trial in the interest of justice is here required because of the jury finding that driver Martin was not in any respect causally negligent.  As a matter of law, he must be held to have been negligent as to lookout.  The percentage of negligence attributable to such failure to maintain adequate lookout is for the jury to determine, but a finding that he was completely without negligence cannot stand.

As to lookout, Martin testified that, as he approached the intersection where the accident occurred, he slowed

his car to 10 miles per hour and looked south to see if any traffic was coming. It was testified that there are houses on all four corners of the intersection, plus bushes and trees which would, to some degree, obstruct a driver's view to the south. Additionally, there were cars parked at the curb on West Chambers street which would also obstruct vision to the south. The first time Martin looked south his car was even with the west curb of 18th street. He testified that he could see for 30 to 40 feet and he did not see any vehicle approaching. The next time Martin looked south was when he was approximately in the middle of the intersection shortly before he was struck. So Martin made two observations as to vehicles possibly approaching from the south. On the first, when his car was at the curbline, he saw nothing. The second was when he was in the center of the intersection. Then he saw the approaching vehicle but this was just before, and very nearly at the place of, impact.

A very similar set of facts came before this court in a 1956 case, *Oelke v. Earle* (1956), 271 Wis. 479, 74 N. W. 2d 336. There, as here, the driver, who was held to be negligent as a matter of law as to lookout, had made two observations. The first, where he saw nothing, was made before he entered the intersection. There it was claimed that a newspaper shack, rather than trees, bushes or houses, obstructed his view. The driver did not make any further observation in the direction from which the other car was approaching until he had arrived at the center of the intersection and did not see the other vehicle until the moment of collision. In holding such driver negligent as a matter of law as to lookout, this court stated:

"If, when Maxfield made his first observation to the east on approaching the intersection, the newspaper shack so obstructed his vision as to prevent him from seeing the approaching Earle car, then it was his duty to make a further observation to the east at a point which

would have enabled him to take effective steps to avoid a collision. . . . This Maxfield failed to do according to his own testimony." (at p. 483)

Unless this case is overturned, and there appears no good reason so to do, it follows that if, when Martin made his first observation to the south on approaching or entering the intersection, his vision was obstructed so that he could not and did not see the approaching Dosenbach car, then it was his duty to make a further observation to the south at a point which would have enabled him to take effective steps to avoid a collision. This Martin failed to do according to his own testimony.

In an earlier case, where counsel for plaintiff sought to excuse his client's failure to make a more efficient observation upon the ground that a bus had obstructed his view to the east, this court found it not necessary to agree or disagree with counsel in the contention that there was such obstruction to view. *Bailey v. Zwirowski* (1954), 268 Wis. 208, 67 N. W. 2d 262. (*See also Cherney v. Simonis* (1936), 220 Wis. 339, 265 N. W. 203; *Canzoneri v. Heckert* (1936), 223 Wis. 25, 269 N. W. 716.) The obligation of a driver as to lookout was clearly defined to be:

". . . The operator of an automobile is obliged to make an *efficient* lookout to avoid striking an approaching vehicle whether the vehicle be moving toward him or crossing his path. This is his duty even though the dominant cause of an ensuing collision be the conduct of the other driver. . . ." *Bailey v. Zwirowski, supra,* at page 211.

Martin had the obligation to make an efficient lookout to the south before proceeding through the intersection. With his view partially blocked or range of vision narrowed by obstructions present, he was obliged to look again at a point which would have enabled him to seek to avoid the collision. He did not take such second view until his car was in the middle of the intersection

very nearly at the time and point of impact. That was not enough. At least it was not soon enough to warrant a jury finding that he was completely without negligence as to lookout.

While we approve the result reached by the trial court, to wit, the ordering of a new trial in the interest of justice, it should be noted that the trial court traveled to such conclusion by a different route. Concurring in the propriety of the destination reached is not to imply approval of the largely unmarked roadways the trial court used to get there.

The trial court order granting a new trial does not set forth the ground or grounds upon which such new trial in the interest of justice is ordered. The controlling statute on this point requires that, when a new trial in the interest of justice is granted, ". . . the reasons that prompted the court to make such order are set forth in detail therein or the memorandum decision setting forth such reasons is incorporated by reference in such order. . . ." Sec. 270.49 (2), Stats. Where such statutory requirement is not complied with, the order is ineffective and the motion for a new trial is to be deemed overruled. *Moldenhauer v. Faschingbauer* (1964), 25 Wis. 2d 475, 131 N. W. 2d 290, 132 N. W. 2d 576. However, the new trial order here does refer to ". . . the court having heard the arguments of counsel, being well and sufficiently advised in the premises, and having issued a written decision on motions after verdict dated November 22, 1968." We hold this to be a sufficient reference in the order to the memorandum decision, although we do not suggest it as any model for future emulation by trial judges.

Finding or creating such bridge between the order for a new trial and the memorandum decision does not end the difficulties encountered in locating and following the footsteps of the trial court in determining that a new

trial in the interest of justice should be ordered. The trial court comments that the ultimate fact question submitted to the jury should have been "subdivided" so that answers as to lookout and as to failure to yield the right-of-way were separately solicited. It is what the jury did do, not what they might have done under a different submission of interrogatories, that is before the court on motions after verdict. Unless the form of verdict submitted was improper, and it was not here, it is too late in the ball game to put a special instead of ultimate fact verdict into the lineup. However, the trial court did state that it felt the plaintiff to be negligent as a matter of law, and did "wholly agree" with defendants' counsel's claim that the verdict was contrary to the evidence. It is somewhat akin to selecting one or two items from a loaded smorgasbord table to do so, but we find in the decision the sound and proper reason for ordering a new trial in the interest of justice. That warrants affirmance even though other reasons stated or suggested would be an inadequate foundation for the new trial order.

On the matter of damages, the trial court found that ". . . the jury awarded them from feelings of liberality. Particularly for pain and suffering, and loss of wages." The appellant argues that the trial judge should have applied the rule of *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393. It is enough here to note that the damages awarded have been challenged on motions after verdict and on this appeal as being excessive. Where an error in law requires reversal or the granting of a new trial in the interest of justice, the *Powers* rule will not be applied to the excessive damages, but the issue of damages should be retried with the issue of liability. *Wells v. National Indemnity Co.* (1968), 41 Wis. 2d 1, 12, 162 N. W. 2d 562.

*By the Court.*—Judgment affirmed.