Thomas J. KUKLINSKI and Antoinette M. Kuklinski, his wife, Plaintiffs-Appellants, †

v.

Humberto A. RODRIGUEZ M.D., Wisconsin Health Care Liability Insurance Plan and Wisconsin Patients Compensation Fund, Defendants-Respondents,

WAUKESHA COUNTY, Medicare and Mid American Life Insurance Company, Third Party Defendants.

Court of Appeals

*No. 95–2125. Submitted on briefs June 11, 1996.—Decided July 2, 1996.*

(Also reported in 552 N.W.2d 869.)

† Petition to review denied.

326

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Edward P. Rudolph* of *Rudolph, Rudolph & Rudolph*, of Elm Grove, Wisconsin.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Randal N. Arnold* and *Michael P. Russart* of *Hinshaw & Culbertson*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

FINE, J. This is a medical-malpractice case. Thomas J. and Antoinette M. Kuklinski appeal from a judgment entered against them as the result of a jury verdict finding that Humberto A. Rodriguez, M.D., was not negligent—either with respect to his care and treatment of Mr. Kuklinski's head injury or in connection with his failure to inform them that a CT scan was an available diagnostic tool. The Kuklinskis raise two issues on this appeal. First, they contend that there was insufficient evidence to support the jury's finding that Dr. Rodriguez was not negligent on the failure-to-inform issue.[1] Second, they assert that the trial court improperly restricted their cross-examination of Dr. Rodriguez. We affirm.

## I.

Mr. Kuklinski was injured when he fell down stairs in his home. He was taken to West Allis Memorial Hospital where he was seen by Dr. Rodriguez, the

---

[1] The Kuklinskis also contend that Dr. Rodriguez was required as a matter of law to inform them about the CT scan. As we explain below, however, this is a question for the jury. *See Martin v. Richards*, 192 Wis. 2d 156, 172–177, 531 N.W.2d 70, 77–79 (1995).

only physician then on duty in the emergency room. As revealed by his handwritten notes, Dr. Rodriguez initially assessed Mr. Kuklinski as having fallen "down some stairs (to the basement of his house) while carrying a pitcher of beer," and that there was "[n]o head injury or LOC [loss of consciousness] apparent." (Parenthetical by Dr. Rodriguez.) Dr. Rodriguez's notes indicated that Mr. Kuklinski was "very intoxicated" and "uncooperative," but was "awake" and "alert." Later, when Mr. Kuklinski's condition had changed, Dr. Rodriguez added to his notes that Mr. Kuklinski "may have been uncon[scious] for 5 min." The report given to the hospital by the emergency medical technicians who brought Mr. Kuklinski to the hospital noted that Mr. Kuklinski's family indicated that he had been unconscious for five minutes, and this statement by the family was repeated on the hospital's nursing notes. The nursing notes also reported that Mrs. Kuklinski "stated that [Mr. Kuklinski] had 6–8 pitchers of beer."

Mr. Kuklinski's condition deteriorated after Dr. Rodriguez's initial assessment, and, ultimately, he displayed symptoms of a serious head injury. At 5 a.m., approximately two hours and fifteen minutes after he arrived at the hospital, Mr. Kuklinski was in a coma and Dr. Rodriguez put a tube in his trachea to help him breathe. Dr. Rodriguez ordered a CT scan for Mr. Kuklinski. Although the Kuklinskis dispute this, Dr. Rodriguez testified that he was "pretty sure it was before the intubation." The CT technician was called from home, and arrived at the hospital at 5:15 a.m. The scan was done at approximately 5:45 a.m. The scan showed an epidural hematoma (bleeding in the brain). It is undisputed that Dr. Rodriguez did not discuss with either Mr. or Mrs. Kuklinski that a CT scan was available. The Kuklinskis contend that this was negli-

gence; the jury determined that it was not. We discuss in turn the failure-to-inform issue and the trial court's evidentiary ruling.

## II.

A. *Failure-to-Inform.*

■

Wisconsin law "requires that a physician disclose information necessary for a reasonable person to make an intelligent decision with respect to the choices of treatment or diagnosis." *Martin v. Richards*, 192 Wis. 2d 156, 175, 531 N.W.2d 70, 78 (1995). It is a right based in both the common law of this state and in statute. *Ibid.* Section 448.30, STATS., codified the duty-to-disclose law recognized by *Scaria v. St. Paul Fire & Marine Ins. Co.*, 68 Wis. 2d 1, 13, 227 N.W.2d 647, 654 (1975), *see Martin*, 192 Wis. 2d at 174–175, 531 N.W.2d at 78, and provides:

> **Information on alternate modes of treatment.** Any physician who treats a patient shall inform the patient about the availability of all alternate, viable medical modes of treatment and about the benefits and risks of these treatments. The physician's duty to inform the patient under this section does not require disclosure of:
>
> **(1)** Information beyond what a reasonably well-qualified physician in a similar medical classification would know.
>
> **(2)** Detailed technical information that in all probability a patient would not understand.
>
> **(3)** Risks apparent or known to the patient.
>
> **(4)** Extremely remote possibilities that might falsely or detrimentally alarm the patient.

**(5)** Information in emergencies where failure to provide treatment would be more harmful to the patient than treatment.

**(6)** Information in cases where the patient is incapable of consenting.

■

Whether a physician is negligent for not disclosing information requires a two-fold analysis: (1) "what a reasonable person under the circumstances then existing would want to know, i.e., what is reasonably necessary for a reasonable person to make an intelligent decision with respect to the choices of treatment or diagnosis," *Martin*, 192 Wis. 2d at 174, 531 N.W.2d at 78; and (2) what the physician knew at the time it is contended that he or she should have made the disclosure, *id.*, 192 Wis. 2d at 195, 531 N.W.2d at 86; *see also* § 448.30(1), Stats. Thus, a physician is not negligent for failing to disclose unless he or she either had sufficient knowledge about the patient's condition to trigger the physician's awareness that the information was reasonably necessary for the patient or the patient's family to make an intelligent decision regarding the patient's medical care, or should have had that knowledge. *Martin,* 192 Wis. 2d at 195, 531 N.W.2d at 86. Although the issue can be taken from the jury if the evidence compels that result as a matter of law, *id.*, 192 Wis. 2d at 195–196, 531 N.W.2d at 86, whether a physician is negligent for failing to disclose is a jury question, *id.*, 192 Wis. 2d at 176–177, 531 N.W.2d. at 79.

The Kuklinskis do not challenge either the trial court's jury instructions on the duty-to-disclose issue or the way the special-verdict question was phrased.[2]

---

[2] Indeed, the instructions given to the jury are not part of the record on appeal.

Rather, they contend in effect that the facts of this case are so clear that the jury's affirmative response to the special-verdict question asking whether Dr. Rodriguez was negligent on the duty-to-disclose issue was required as a matter of law. We disagree.

The scope of our review of the jury's verdict is narrow. "No motion challenging the sufficiency of the evidence as a matter of law to support a verdict, or an answer in a verdict, shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party." RULE 805.14(1), STATS. Special deference is given to a jury verdict that is approved by the trial court. *Fehring v. Republic Ins. Co.*, 118 Wis. 2d 299, 305-306, 347 N.W.2d 595, 598 (1984). Thus, where, as here, the trial court has approved the jury verdict, the scope of our review is even narrower: the verdict may not be overturned unless "there is such a complete failure of proof that the verdict must be based on speculation." *Coryell v. Conn*, 88 Wis. 2d 310, 315, 276 N.W.2d 723, 726 (1979). As proponents of a finding that Dr. Rodriguez was negligent, the Kuklinskis had the burden of proving negligence "to a reasonable certainty by the greater weight of the credible evidence." WIS J I-CIVIL 200. There was sufficient evidence in this case to support the jury's determination that the Kuklinskis had not met their burden of proof.

The focus of an evaluation of whether a physician is negligent for failing to disclose available methods of diagnosis or treatment is on the "circumstances then existing" in the particular case. *Martin*, 192 Wis. 2d at 174, 531 N.W.2d at 78. Here, evidence in support of the

331

jury's verdict concerns not Mr. Kuklinski's *actual* condition viewed in retrospect, but, as the trial court recognized, what Dr. Rodriguez reasonably knew it to be.

Brian Lochen, M.D., who testified as an expert witness for the Kuklinskis, and who testified that he was "board certified in family practice" and that he worked "half time" in the emergency room at a hospital in Reedsburg, Wisconsin, and "half time in the field of addiction medicine treatment," testified on direct-examination that an emergency-room physician would refer a patient for a CT scan, and would so inform the family, "if that physician had determined that this was a patient with a head injury who warranted a CT scan." Dr. Rodriguez testified that as a result of his initial diagnosis he did not believe that Mr. Kuklinski had suffered a head injury, and, as noted, this evaluation is reflected in his initial notes. James J. Cicero, M.D., chief of the emergency medical department at the Ramsey Medical Center in St. Paul, Minnesota, who testified as an expert witness for Dr. Rodriguez, was asked by the Kuklinskis' attorney whether they "should have been consulted regarding the availability of immediate CT scan as a form of diagnosis and treatment that could be used in the context of Mr. Kuklinski's injury." Dr. Cicero responded: "I don't believe that's something that would be normally done in that first period of time, no."[3] Later, when Mr. Kuk-

---

[3] As the Kuklinskis point out correctly, custom of the profession does not circumscribe the physician's duty to make proper disclosure to the patient of the various alternatives that are available for diagnosis and treatment. *See Scaria v. St. Paul Fire & Marine Ins. Co.*, 68 Wis. 2d 1, 12–13, 227 N.W.2d 647, 653–654 (1975). Nevertheless, the jury could have considered this evidence in its assessment of what Dr. Rodriguez reasona-

linski's condition worsened, Dr. Rodriguez ordered the CT scan.

Dr. Rodriguez's initial diagnosis of Mr. Kuklinski was supported by Dr. Lochen's testimony that using the Glasgow Coma Scale, which he described as a tool to "assess a person's central nervous system awareness, alertness, that's used in trauma cases," Mr. Kuklinski presented at the hospital with a score of fourteen out of a possible "perfect score" of fifteen. He agreed with Dr. Rodriguez's counsel that most medical texts classify a Glasgow Coma Scale of between thirteen and fifteen as indicating "minor head injury." Albert Butler, M.D., a neurosurgeon and former chairman of the Division of Neurological Surgery at Northwestern University, who testified as an expert witness for the Kuklinskis, also testified that Mr. Kuklinski's symptoms at his presentation at the hospital would have permitted a classification on the Glasgow Coma Scale of either a fourteen or a fifteen. Dr. Lochen agreed with Dr. Rodriguez's counsel that the type of brain bleeding developed by Mr. Kuklinski was "mighty rare." Significantly, the jury credited Dr. Rod-

---

bly knew at the time that he was evaluating Mr. Kuklinski. Significantly, there is nothing in the appellate record or the briefs that indicates that the Kuklinskis sought to have the jury instructed on the limited purpose for which they could consider this evidence. *See* RULE 901.06, STATS.:

> **Limited admissibility.** When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the judge, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

The trial court need not give an instruction under RULE 901.06 unless requested to do so. *See State v. Stawicki*, 93 Wis. 2d 63, 76, 286 N.W.2d 612, 618 (Ct. App. 1979).

riguez's version of the events, and found that he was not negligent "with respect to his care and treatment of Mr. Kuklinski." As the trial court recognized, this encompasses the jury's determination that Dr. Rodriguez had no reason to know that Mr. Kuklinski had a serious head injury before he says that he did know it.

■

As noted, we must give the evidence in this case all reasonable inferences in support of the jury's answer to the special-verdict question, even though the Kuklinskis point to other evidence in the record—some of it disputed—that would have permitted the jury to reach a different result. Given what the jury could reasonably conclude Dr. Rodriguez knew at the time that the Kuklinskis claim that he should have discussed with them the availability of a CT scan, the jury's finding that Dr. Rodriguez was not negligent on the informed-consent issue must be upheld.

### B. *Restriction on Cross-Examination.*

At the start of his cross-examination of Dr. Rodriguez, the Kuklinskis' trial counsel asked what Dr. Rodriguez had done to prepare for his trial testimony, other than reviewing the depositions and meeting with his lawyer:

Q Have you done anything else to get ready for your testimony?

A I guess I don't know what you're getting at.

Q Have you rehearsed your testimony?

A No, I have not.

Q Has [Dr. Rodriguez's trial lawyer] suggested to you that you should answer certain questions in certain ways?

[Dr. Rodriguez's trial lawyer]: Objection, Judge.

THE COURT: He may answer.

THE WITNESS: No, he has not. He has given me legal counsel about — and also a lot of information which I found to be very helpful about what's going on here.

Following an objection by Dr. Rodriguez's counsel, the trial court excused the jury. The Kuklinskis' lawyer then told the court that he had information that what he called "rehearsal" had taken place in the courtroom: that Dr. Rodriguez's lawyer took the witness stand and was questioned by a lawyer for the hospital, which was no longer a defendant, while Dr. Rodriguez sat in the jury box and watched. The Kuklinskis' lawyer argued:

> I believe I'm entitled to ask the witness [Dr. Rodriguez] if anybody has shown him how to testify in this case, and in particular, I would like to ask the witness whether or not there has been a dress rehearsal, as a matter of fact in this courtroom where [Dr. Rodriguez's trial lawyer] acted his part and [the hospital's lawyer] cross examined him in the presence of people that were not a part of this law firm, and whether or not that practice session was videotaped so that he could continue to rehearse when [Dr. Rodriguez's trial lawyer] was showing him what to say.

In response to the trial court's question, Dr. Rodriguez's lawyer explained his version of the event:

> I believe it was the Friday before trial, I brought Dr. Rodriguez to the courtroom to show him the courtroom where he'd be testifying. I brought [the hospital's lawyer], who had represented the hospital during the course of the lawsuit, and a court

reporter with a video camera, and I asked [the hospital's lawyer] to conduct a mock cross-examination of Dr. Rodriguez in order to give him the feeling of what it's like to sit up here and testify and answer nasty questions from obnoxious defense counsel — defense counsel, in this case, since it was [the hospital lawyer].

Dr. Rodriguez's lawyer denied the allegation that he sat on the witness stand answering questions while Dr. Rodriguez watched from the jury box, and repeated this denial after the trial court precluded further examination into that area:

I just want to state that it is absolutely untrue that I sat in the witness stand and gave responses to questions while it was videotaped and Dr. Rodriguez watched. [The hospital's lawyer] is available by phone, you can talk to her; the videographer is available by phone, you can talk to her if you doubt my representation to the Court as an officer to the Court in that regard.

■
The trial court held that the work-product doctrine prevented further inquiry into whether Dr. Rodriguez's lawyer had put on the "rehearsal."[4] Although the trial court's work-product rationale was faulty, we affirm

[4] The trial court's ruling was, as it admitted to counsel, rushed because of the Kuklinskis' failure to give advance warning of the potential problem. Thus, prior to a short break, the trial court told counsel that it was unhappy over how the dispute over the alleged "rehearsal" had been presented:

THE COURT: What I really resent, I really resent on a Friday afternoon that we're going into this. You could have told me this yesterday, the day before, the day after it happened. This was going to be a problem.

. . . .

nevertheless because the Kuklinskis made an insufficient offer of proof to permit further inquiry once Dr. Rodriguez denied both that he had "rehearsed" his testimony and that his lawyer had "suggested" to him that he "should answer certain questions in certain ways." *See State v. Holt*, 128 Wis. 2d 110, 124, 382 N.W.2d 679, 687 (Ct. App. 1985) (trial court will be affirmed if it reaches proper result, albeit for the wrong reason).

The work-product doctrine protects against the forced disclosure of "documents and tangible things" that are "prepared in anticipation of litigation or for trial," RULE 804.01(2)(c)1, STATS., as well as other information that may not have been reduced to tangible form, *Meunier v. Ogurek*, 140 Wis. 2d 782, 790, 412 N.W.2d 155, 158 (Ct. App. 1987); 8 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2024, at 337–338 (2d ed. 1994). Additionally, the doctrine's protection for work-product material does not disappear

---

THE COURT: I am trying to get this jury done. I am trying to get this jury trial done. You may have a legitimate complaint, but I sure am irritated that you lay it on me now.

After the break, the trial court explained why it would not permit any more cross-examination of Dr. Rodriguez about the alleged rehearsal:

My concern, and all I'm going to do is give you a ruling, but my concern, [the Kuklinskis' lawyer], is one of the things that I started off in the beginning of the trial, I said if there's anything that we can handle in the absence of the jury, not on their time, do it at night, come in early, let's do it on nonjury time.

I'm going to give — this is jury time. I will give you as much time and consideration as you've allowed me under the circumstances. I don't have time to research this issue, to look at videotapes, or to conduct an ex parte hearing. I'm not going to do that to this jury. It's not necessary. Shouldn't have happened this way. The best argument I've heard is that it's work product.

This questioning is, therefore, the objection sustained and we'll go on to another area.

once the trial has begun, although a different standard governing disclosure may apply. *United States v. Nobles*, 422 U.S. 225, 239 (1975). Clearly, if the "rehearsal" was as the Kuklinskis' trial lawyer described it, whatever work-product protection that might have cloaked the exercise would have been waived—not only because it was done in front of court personnel or others not under a duty of confidentiality with respect to the event, *see* 8 WRIGHT ET AL., *supra*, § 2024 at 369 (disclosure of work-product to third persons does not waive the privilege "unless it has substantially increased the opportunities for potential adversaries to obtain the information"), but also because RULE 906.12, STATS., makes available to an opponent anything that a witness uses to "refresh the witness's memory for the purpose of testifying, either before or while testifying."[5] The trial court, however,

---

[5] RULE 906.12, STATS., provides:

**Writing used to refresh memory.** If a witness uses a writing to refresh the witness's memory for the purpose of testifying, either before or while testifying, an adverse party is entitled to have it produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony, the judge shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal. If a writing is not produced or delivered pursuant to order under this rule, the judge shall make any order justice requires, except that in criminal cases when the prosecution elects not to comply, the order shall be one striking the testimony or, if the judge in the judge's discretion determines that the interests of justice so require, declaring a mistrial.

Although the rule uses the term "writing," as does Rule 612 of the Federal Rules of Evidence, most state courts whose rules

had no evidentiary basis upon which to make a ruling based on either work-product or RULE 906.12; the only information presented were the conflicting statements of the opposing lawyers.

■

An effective offer of proof under RULE 901.03, STATS., must satisfy the trial court that the evidentiary hypothesis advanced by the proponent of the evidence can be sustained. *State v. Robinson*, 146 Wis. 2d 315, 329, 431 N.W.2d 165, 170 (1988). The Kuklinskis' trial counsel specifically told the trial court that they were not seeking production of the video tape. In light of the unresolved conflict between the lawyers' representations to the trial court about the nature of the incident, and in light of the fact that the Kuklinskis' lawyer was relaying hearsay information while the lawyer for Dr. Rodriguez was recounting his personal recollection of the event as "an officer of the court," we cannot say that the trial court's failure to permit further cross-examination of Dr. Rodriguez about the alleged "rehearsal" was error; in essence, the trial court had determined that the inquiry already made into that area was sufficient. *See* RULE 904.03, STATS. ("Although relevant, evidence may be excluded . . . by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). We thus conclude that there was no error. *See Kolpin v. Pioneer Power & Light Co.*, 162 Wis. 2d 1, 30, 469 N.W.2d 595, 607 (1991) (appellate court will uphold decision vested in trial court's discretion if there are any facts of record that support it).

are patterned on the federal rules "have construed 'writing' to mean anything." GREGORY P. JOSEPH & STEPHEN A. SALTZBURG, EVIDENCE IN AMERICA, ch. 46, pp. 5–6 (1987).