Karl A. Burg by his legal guardian, Gladys M. Weichert, Plaintiff-Appellant,

v.

Cincinnati Casualty Insurance Co. and Robert W. Zimmerman, Defendants-Respondents.†

Court of Appeals

*No. 00–3258. Submitted on briefs July 6, 2001.—Decided September 11, 2001.*

2001 WI App 241

(Also reported in 635 N.W.2d 622.)

† Petition to review granted 11-27-01.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Victor C. Harding* of *Warshafsky, Rotter, Tarnoff, Reinhardt & Bloch, S.C.*, of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Gregory J. Cook* of *Kasdorf, Lewis & Swietlik, S.C.*, of Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. SCHUDSON, J. Karl A. Burg, by his legal guardian, Gladys M. Weichert, appeals from the judgment, following a jury trial, dismissing his action against Robert W. Zimmerman and Zimmerman's insurer, Cincinnati Casualty Insurance Co.[1] Burg argues that the trial court erred in concluding that Zimmerman's conduct in the operation of a snowmobile was not negligent per se, and that the jury's damages verdict was perverse. Burg is correct and, therefore, we reverse.

## I. BACKGROUND

¶ 2. The facts relevant to resolution of the issues on appeal are not in dispute. According to the trial testimony, at approximately 5:30 P.M. on November 29, 1995, about one hour after sunset, Burg and a friend were snowmobiling on two snow-covered gravel lanes,

---

[1] The appeal also brings before this court the trial court order denying Burg's postverdict motion for a new trial. *See* Wis. Stat. Rule 809.10(4) (1999–2000). All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

parallel to Highway 36 in Racine County. The two lanes, under construction and not yet open to automobile traffic, were to become additional lanes of the highway. Zimmerman and a friend, Dean Leighton, were also snowmobiling on the same lanes when they stopped, turned off their motors, and were talking; their snowmobiles, snowmobile suits, and helmets were black. The head lamps and tail lamps of Zimmerman's and Leighton's snowmobiles automatically went out when Zimmerman and Leighton turned off their motors.

¶ 3. Burg and his friend, approaching the location where Zimmerman and Leighton had stopped, did not see them until it was too late. Burg swerved, apparently to avoid Zimmerman's snowmobile, and struck Leighton's snowmobile.[2] Burg was thrown approximately forty feet and sustained brain injury, resulting in a coma and the need for prolonged hospitalization and rehabilitation. He has permanent residual physical and cognitive impairments.

¶ 4. Burg sued Zimmerman and his insurer, alleging negligence. In pretrial proceedings, Burg moved for an order declaring that Zimmerman was negligent per se under Wis. Stat. § 350.09(1), which, in relevant part, provides: "Any snowmobile operated during the hours of darkness . . . shall display a lighted head lamp and tail lamp."[3] Denying Burg's motion, the trial court ruled, as a matter of law, that Zimmerman had not been "operating" his snowmobile at the time of the accident.

---

[2] None of the issues in this appeal, however, turns on the fact that Burg struck Leighton's snowmobile, not Zimmerman's.

[3] It was undisputed that Zimmerman's and Leighton's snowmobiles had neither their head lamps nor tail lamps illuminated at the time of the accident. Wisconsin Stat. § 350.09(2) provides:

¶ 5. During the course of the trial, Burg's attorney suggested that "maybe the Court has made an incorrect ruling up to this point, and maybe the Court can correct its ruling." The trial court, having concluded that because the motor was not on, Zimmerman was not "operating" his snowmobile at the time of the accident, responded that "it's been pretty much a consistent ruling when [snowmobiles are] parked, they're not

> After February 12, 1970, the head lamp on a snowmobile may be of the single beam or multiple beam type, but in either case shall comply with the following requirements and limitations:
>
> (a) The head lamp shall be an electric head lamp and the current shall be supplied by a wet battery and electric generator, by a current-generating coil incorporated into the magneto or by a generator driven directly by the motor by means of gears, friction wheel, chain or belt.
>
> (b) The head lamp shall display a white light of sufficient illuminating power to reveal any person, vehicle or substantial object at a distance of 200 feet ahead.
>
> (c) If the snowmobile is equipped with a multiple beam head lamp, the upper beam shall meet the minimum requirements set forth in par. (b) and the lower most beam shall be so aimed and of sufficient intensity to reveal persons and vehicles at a distance of at least 100 feet ahead.
>
> (d) If the snowmobile is equipped with a single beam lamp, such lamp shall be so aimed that when the vehicle is loaded none of the high intensity portion of the light, at a distance of 25 feet ahead, projects higher than the level of the center of the lamp from which it comes.

Section 350.09(3) provides, "After February 12, 1970, the tail lamp on a snowmobile must display a red light plainly visible during darkness from a distance of 500 feet to the rear."

being operated based upon the definition of the word 'operate' in the statutes of this state."[4] The trial court, however, commented:

> I think the law is stupid, but I'm stuck with what the law is.
>
> You know, I think when two people park their snowmobile[s] out there and are sitting around talking about what route they're going to take, it's hard for me to comprehend how the law can say that's not operating, but it does.

¶ 6. After the jury retired for deliberation, Burg, relying on WIS. STAT. §§ 350.09(1)-(3) and 346.51,[5] renewed his motion that the court find Zimmerman

---

[4] " 'Operate' means the exercise of physical control over the speed or direction of a snowmobile or the physical manipulation or activation of any of the controls of a snowmobile necessary to put it in motion." WIS. STAT. § 350.01(9r).

[5] WISCONSIN STAT. § 346.51, in relevant part, provides:

**(1)** No person shall park, stop or leave standing any vehicle, whether attended or unattended, *upon the roadway\* of any highway* . . . when it is practical to park, stop or leave such vehicle standing off the roadway, but even the parking, stopping or standing of a vehicle off the roadway of such highway is unlawful unless the following requirements are met:

. . . .

(b) Such standing vehicle must be capable of being seen by operators of other vehicles from a distance of 500 feet in each direction along such highway.

(Emphasis and asterisk added.) Under WIS. STAT. § 346.02(10), § 346.51 is applicable to operators of snowmobiles upon roadways.

\*WISCONSIN STAT. § 340.01(54) states, in relevant part, " 'Roadway' means that portion of a highway between the

negligent per se. The trial court replied: "I think the record's clear on that. The motion is denied."[6]

¶ 7. The jury found neither Zimmerman nor Leighton negligent "with respect to the use" of their snowmobiles. Burg moved for a new trial, again contending that Zimmerman was negligent per se, and also arguing that the jury's determination of damages was "perversely low." The trial court denied his motion, stating that "[t]here is nothing in this definition [of 'operate' under Wis. Stat. § 350.01(9r)] that supports [Burg's] claim." The court reasoned, "Here the facts show . . . that the defendant was merely sitting on a snowmobile that was not turned on, and that he was not engaged in any physical manipulation or activation of the snowmobile's controls."

## II. DISCUSSION

### A. Negligence Per Se

¶ 8. We agree that if, as the trial court concluded, turning off one's snowmobile motor and sitting on the snowmobile on a snowmobile lane in the dark did not

---

regularly established curb lines or that portion which is improved, designed or ordinarily used for vehicular travel, excluding the berm or shoulder."

[6] Earlier in the trial, outside the presence of the jury, the court had explained why it believed that Wis. Stat. § 346.51 did not apply to the case:

> This isn't designed to protect snowmobiles from driving 55 feet off the highway. It's designed to protect vehicles that are traveling on the roadway.
>
> It requires that . . . the vehicle when stopped off the roadway is visible 500 feet back for the protection of people who are using the roadway, not for the protection of the people who are using the land adjacent to the roadway some 55 feet off the roadway.

constitute "operating," the law would be "stupid." We conclude, however, that the statutes, literally read and reasonably applied, establish that such conduct does indeed constitute "operating" a snowmobile.

¶ 9. The interpretation of a statute presents a question of law subject to this court's *de novo* review. *Gloudeman v. City of St. Francis*, 143 Wis. 2d 780, 784, 422 N.W.2d 864 (Ct. App. 1988). "In construing a statute, the primary source is the language of the statute itself." *County of Milwaukee v. Proegler*, 95 Wis. 2d 614, 625, 291 N.W.2d 608 (Ct. App. 1980). Interpreting the language of the statute, we endeavor to give the words their commonsense meanings and to avoid any interpretation that would produce an absurd result. *See Ford Motor Co. v. Lyons*, 137 Wis. 2d 397, 449, 405 N.W.2d 354 (Ct. App. 1987). We conclude that "operate," under Wis. Stat. § 350.01(9r), is clear and unambiguous, *see Proegler*, 95 Wis. 2d at 624–29 (concluding that the meaning of "operate," under Wis. Stat. § 346.63(3), is clear), and that it does encompass Zimmerman's conduct in this case.

¶ 10. "Operate," under Wis. Stat. § 350.01(9r), includes "the exercise of physical control over the speed or direction of a snowmobile." "Operate," therefore, necessarily encompasses a person's actions in stopping a snowmobile and turning off its motor because, literally, such actions do "exercise physical control over the speed and direction" of the snowmobile. The fact that such actions *stop* the snowmobile certainly renders those actions no less controlling of speed and direction than other actions that accelerate the snowmobile or change its course.

152

¶ 11. Further, under the statute, turning off the motor certainly, and quite literally, involves "the physical manipulation . . . of the controls of a snowmobile necessary to put it in motion." The fact that the manipulation *stopped* the snowmobile's motion certainly renders that action no less a manipulation of the controls necessary to put the snowmobile in motion. Indeed, in *Proegler*, this court, in determining the meaning of "operate" under WIS. STAT. § 346.63(3)(b),[7] held that "restraining the movement of a running vehicle constitutes physical manipulation of a vehicle's controls which falls within the scope of our statute." *Proegler*, 95 Wis. 2d at 627–28. Obviously, turning off a snowmobile's motor is a "physical manipulation" of the controls, causing a "restraining [of] the movement" of the snowmobile.

¶ 12. Moreover, while *Proegler* involved a drunk driver sleeping in his car with the motor running, *id.* at 624, this court's comments now gain special significance in the context of the instant case:

> "[O]ne could have 'actual physical control' while merely parking or standing still so long as one was keeping the car in restraint or in position to regulate its movements. Preventing a car from moving is as much control and dominion as actually putting the car in motion on the highway. Could one exercise any more regulation over a thing, while bodily present, than prevention of movement or curbing movement[?] As long as one were physically or bodily able to assert dominion, in the sense of movement, then he [or she] has as much control over an object as he [or she] would if he [or she] were actually driving the vehicle."

[7] WISCONSIN STAT. § 346.63(3)(b) provides, " 'Operate' means the physical manipulation or activation of any of the controls of a motor vehicle necessary to put it in motion."

*Id.* at 628 (quoting *State v. Ruona,* 321 P.2d 615, 618 (Mont. 1958)). Indeed, a drunk driver, sleeping in a parked car with the motor running, has less physical control over that vehicle than a snowmobile operator, sitting awake at the controls of a parked snowmobile with the motor off.[8] *See also State v. Modory,* 204 Wis. 2d 538, 544, 555 N.W.2d 399 (Ct. App. 1996) (*"Proegler* does not say that movement is necessary; rather, it merely says that if the defendant exercises dominion *in the sense of movement,* then the fact of operation has been established.").

¶ 13. As Burg correctly argues, the legislature, quite obviously, enacted the detailed requirements of Wis. Stat. § 350.09 in part because it "wants snowmobilers at night to illuminate their head and tail lamps so other people in the vicinity can see them." *See Parr v. Douglas,* 253 Wis. 311, 318–19, 34 N.W.2d 229 (1948) (explaining that statutes governing trailer lights establish safety standards, the violation of which "shall be *prima facie* evidence of unsafe practices in the use of the public highway by such vehicles"). To conclude, nevertheless, that the mandate of § 350.09(1) does not apply to the circumstances of this case would indeed be

---

[8] And, indeed, affirming the trial court's interpretation would render a truly ironic result: the operator of a snowmobile that is stopped with its motor off *would not* be negligent per se, while the operator of a snowmobile that is stopped with its motor on *would* be negligent per se, although he or she would be better able to quickly respond to a dangerous situation. As Burg fairly argues:

> [E]veryone agrees that Zimmerman would have been negligent per se for sitting in the dark with his engine running and his lights off. To then argue that he is not negligent per se by turning both his engine and lights off only rewards Zimmerman for his unreasonable action. This is nonsense.

"stupid." Such a conclusion would require an absurd statutory interpretation precluding the literal reading and commonsense application of the statute to one of the most serious dangers these safety standards are intended to prevent.[9] *See Lyons*, 137 Wis. 2d at 449 (explaining that statutes are to be construed to avoid absurd results).

## B. Damages

¶ 14. Burg also argues that "[t]he jury's award of damages was so perverse that it warrants a new trial in the interests of justice." He explains that "[his] medical condition was never in issue," and that the defense "called no medical witnesses" to counter the undisputed evidence of his permanent injuries. Further, he points out that the jury awarded damages that were considerably less than what even *the defense* suggested.

██

¶ 15. Zimmerman does not dispute Burg's factual assertions. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments deemed admitted). He simply argues that "[e]ven if this court were to find the damages awarded by the jury in this case inad-

---

[9] The dangers of snowmobiling are extremely serious. According to the Wisconsin Department of Natural Resources, thirty-eight fatal snowmobile accidents were reported in Wisconsin for fiscal year 1999–2000, and collision with an object was the leading cause of death. Wis. Dep't of Natural Res., *1999–2000 Snowmobile Program Report Summary*, *at* http://www.dnr.state.wi.us/org/es/enforcement/safety/snowmobile_report.html. Not surprisingly, therefore, the legislature has made the "operator of a snowmobile upon a roadway" subject to numerous rules of the road governing operators of other motor vehicles. *See* Wis. Stat. § 346.02(10).

equate, a new trial in the interests of justice is not warranted." Zimmerman, however, premises his argument on the principle that "where the jury verdict finding the plaintiff solely negligent in causing his own injuries is supported by credible evidence upon the record, inadequate damages is not a ground for a new trial." True enough; but where, as here, the jury's verdict cannot stand because the plaintiff was denied the correct ruling on Zimmerman's negligence per se, a new trial is required on both liability and damages. *See Martin v. Allstate Ins. Co.*, 45 Wis. 2d 657, 663, 173 N.W.2d 646 (1970) (when damages award has been challenged as excessive, and error in law necessitates new trial in interests of justice, "the issue of damages should be retried with the issue of liability"); *Mainz v. Lund*, 18 Wis. 2d 633, 645, 119 N.W.2d 334 (1963) (although inadequate damages award "is not in itself grounds for ordering a new trial where a jury has answered other questions in the verdict so as to find no liability on the part of the party charged with negligence," the inadequate damages award may be significant in determining whether interests of justice require new trial where "the finding of no liability is against the great weight of the evidence").

*By the Court.*—Judgment reversed.

¶ 16. CURLEY, J. (*dissenting*). The controversy in this case surrounds the interpretation of WIS. STAT. § 350.09(1) which requires, in part, "Any snowmobile operated during the hours of darkness . . . shall display a lighted head lamp and tail lamp." Burg urged the trial court to find that Zimmerman had violated this safety statute and, consequently, was negligent per se. The trial court disagreed, finding that the definition of the verb "operate" found in the statutes did not encom-

pass the facts presented here. Those facts are that Zimmerman, while keeping the keys in the ignition, decided to stop his snowmobile by turning off the ignition, which resulted in the extinguishment of the head and tail lamp, in order to chat with his fellow snowmobiler. By contorting the statute and borrowing phrases from other cases, the majority opinion has redefined the word "operate" to place Zimmerman's conduct within the statute. I disagree and respectfully dissent.

¶ 17. The interpretation of a statute is a question of law which this court reviews *de novo*. *State v. Ambrose*, 196 Wis. 2d 768, 776, 540 N.W.2d 208 (Ct. App. 1995). The goal of statutory interpretation is to discern and to give effect to the intent of the legislature. *Hackl v. Hackl*, 231 Wis. 2d 43, 47, 604 N.W.2d 579 (Ct. App. 1999); *State v. Cardenas-Hernandez*, 219 Wis. 2d 516, 538, 579 N.W.2d 678 (1998). The primary source for statutory construction is the language of the statute itself. *Wisconsin Envtl. Decade v. Public Serv. Comm'n*, 81 Wis. 2d 344, 350, 260 N.W.2d 712 (1978). In determining the meaning of any single phrase or word in a statute, it is necessary to examine it in light of the entire statute. *State v. Board of Trs.*, 253 Wis. 371, 373, 34 N.W.2d 248 (1948). Where the statute is ambiguous, we may look to the legislative intent found in the language of the statute in relation to its scope, history, context, subject matter, and objective intended to be accomplished. *Wisconsin Envtl. Decade*, 81 Wis. 2d at 350; *State v. Wachsmuth*, 73 Wis. 2d 318, 324–25, 243 N.W.2d 410 (1976); *Ortman v. Jensen & Johnson, Inc.*, 66 Wis. 2d 508, 520, 225 N.W.2d 635 (1975); *State v. Automatic Merchandisers*, 64 Wis. 2d 659, 663, 221 N.W.2d 683 (1974); *Wisconsin Southern Gas Co. v. Public Serv. Comm'n*, 57 Wis. 2d 643, 648, 205 N.W.2d

403 (1973). The objective to be accomplished must be given great weight in determining legislative intent. *Town of Menomonee v. Skubitz*, 53 Wis. 2d 430, 437, 192 N.W.2d 887 (1972). If the statute's language is clear, we look no further and simply apply the statute to the facts and circumstances before us. *See Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519 (1996). An interpretation of a statute is unreasonable if it directly contravenes the language of the statute, is plainly contrary to the legislative intent underlying the statute, or lacks a rational basis. *Trott v. DHFS*, 242 Wis. 2d 397, 409, 626 N.W.2d 48 (Ct. App. 2001). Here, the majority's interpretation contravenes the clear statutory language and lacks a rational basis.

¶ 18. The legislature's definition of "operate," found in Wis. Stat. § 350.01(9r), reads: " 'Operate' means the exercise of physical control over the speed or direction of a snowmobile or the physical manipulation or activation of any of the controls of a snowmobile necessary to put it in motion. 'Operate' includes the operation of a snowmobile." There is nothing ambiguous about the language found in the statute which requires us to resort to other aids in interpreting the statute. Clearly, one operates a snowmobile when one controls either the speed or direction of the snowmobile or when one physically manipulates or activates the controls. A snowmobile stopped without the engine running or any controls activated, by virtue of the definition, is not being "operated" by the person sitting on it.

¶ 19. Here, Zimmerman was neither running nor moving his snowmobile when Burg was injured. While sitting on a snowmobile, stopped and turned off in the middle of a well-used snowmobile path on a dark night while wearing dark clothes surely must be negligent

conduct, it does not constitute "operating" the snowmobile. Evidence was presented that in order to start the snowmobile, Zimmerman was required to both turn the key and pull a rope. When a person sits on a snowmobile that is not on, has the keys in the ignition in the off position, and, further, needs to pull a rope to start the engine, one is not exercising physical control over the speed or direction of the snowmobile. There was neither a speed nor a direction. In addition, Zimmerman was not physically manipulating or activating the controls necessary to put it in motion.

¶ 20. While the majority would make it appear that Zimmerman was in the process of slowing down and turning off the engine when the accident occurred, no evidence supports this conclusion. The record states that Zimmerman's engine had been turned off for *five* minutes before the accident. Therefore, the interpretation given by the majority opinion, that because Zimmerman once exercised physical control over the speed of the snowmobile by stopping it and turning it off some time before the accident occurred, but remained seated on the snowmobile, he was still "operating" the vehicle when the accident occurred, twists and distorts the interpretation of "operate."

¶ 21. Were the majority's definition to be adopted, there would be no logical stopping point. How much time need expire for someone seated on the snowmobile, after turning off the ignition and leaving the keys in the ignition, in order to no longer be "operating" the snowmobile? Is a person operating a snowmobile if he turns off the snowmobile and removes the keys, but remains seated on the snowmobile? What if someone stops the snowmobile, leaves the keys in the ignition, walks away from the snowmobile but returns and sits on it — is he still "operating" the snowmobile? Consider

whether an underage person, who sits on a snowmobile stored in a garage with the keys in the ignition, is guilty of operating a snowmobile contrary to Wis. Stat. § 350.02. Clearly, the majority's attempt to re-shape Zimmerman's conduct so as to fit within the definition of "operate" in order to find Zimmerman negligent is misguided and fraught with problems.

¶ 22. Moreover, contrary to the majority's conten-tion, both the *Milwaukee County v. Proegler*, 95 Wis. 2d 614, 291 N.W.2d 608 (Ct. App. 1980), and *State v. Modory*, 204 Wis. 2d 538, 555 N.W.2d 399 (Ct. App. 1996), cases support the legal conclusion that Zimmer-man was not operating the snowmobile when the acci-dent occurred. As noted in the majority opinion, Proe-gler was found guilty of operating his vehicle while under the influence of an intoxicant when he was found sleeping in a car with the motor running. The holding of the case states that one is operating a vehicle when "a defendant starts the motor and/or leaves it running." *Proegler*, 95 Wis. 2d at 614. Zimmerman was doing neither when the accident occurred.

¶ 23. Modory was convicted of operating while intoxicated when he was discovered in his pickup truck, seated in the driver's side of the car with the engine running and the wheels spinning. The truck, was not moving, however, because it was resting on a mound of dirt which prevented the tires from making contact with the ground. In affirming his conviction, this court said:

> We agree with the State's argument. Section 346.63(3)(b), Stats., does not require movement. The statute only requires that the defendant physically manipulate or activate any of the controls "necessary to put [the motor vehicle] in motion." There is little doubt from the evidence in this case that Modory performed

the requisite acts under this statute. He was behind the wheel of a vehicle with the engine running and was attempting to free the vehicle from its stuck position.

*Modory*, 204 Wis. 2d at 544. Again, the undisputed facts are that Zimmerman's snowmobile engine was off, had been off for some time, and he was not attempting any movement when the accident occurred. Under both holdings, Zimmerman clearly was not operating the snowmobile.

¶ 24. I suspect the real concern behind the majority opinion's ill-conceived definition of "operate" is its objection to the jury's finding that Zimmerman's acts were not negligent at all and to the jury's award of inadequate damages to Burg. If true, then the majority should have questioned whether they were "satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain [the jury's verdict]," *Kuklinski v. Rodriguez*, 203 Wis. 2d 324, 331, 552 N.W.2d 869 (Ct. App. 1996), and, depending on the answer, remand for a new trial. Attempting to squeeze this factual situation into the definition of "operate" will only serve to obfuscate the law and result in additional litigation.

¶ 25. Accordingly, I respectfully dissent.